1  THOMAS W. BARTH, SBN 154075
   BARTH TOZER & TIMM LLP
2  431 I Street, Suite 201
   Sacramento, California 95814
3  Telephone: (916) 440-8600
   Facsimile: (916) 440-9610
4  Email: tbarth@bttlawfirm.com

5  Attorneys for Plaintiffs NATOMAS
   GARDENS INVESTMENT GROUP LLC and
6  ORCHARD PARK DEVELOPMENT LLC

7

8              UNITED STATES DISTRICT COURT

9            EASTERN DISTRICT OF CALIFORNIA

10

11 NATOMAS GARDENS INVESTMENT GROUP        | Case No. 2:08-CV-02308-FCD-KJM
   LLC, a California limited liability company, et al.,
12                                          | **OPPOSITION TO DEFENDANTS'**
              Plaintiffs,                   | **MOTION FOR JUDGMENT ON**
13                                          | **THE PLEADINGS, OR IN THE**
        v.                                  | **ALTERNATIVE, PARTIAL**
14                                          | **JUDGMENT ON THE PLEADINGS**
   JOHN G. SINADINOS, et al.,
15                                          | Date:  April 17, 2009
              Defendants.                   | Time:  10:00 a.m.
16                                          | Ctrm:  2
                                            | Judge: Hon. Frank C. Damrell, Jr.
17

18

19

20

21

22

23

24

25

26

27

28

00003421

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES CITED ................................................................. ii

I.      INTRODUCTION ................................................................................. 1

II.     ARGUMENT ........................................................................................ 3

     A.     Procedural Legal Standards ......................................................... 2

     B.     Facts Alleged in the FAC ............................................................ 3

         1.     The Parties ........................................................................ 3

         2.     Pattern of Racketeering Activity .................................... 6

         3.     Glenn Sorensen, Jr. and Stockton & 65th LP ................ 9

         4.     Stephen Foondos ............................................................. 10

     C.     Plaintiffs Properly State Individual Claims ............................... 11

     D.     Plaintiffs Complied with the Requirements of Rule 23.1 .......... 14

     E.     Plaintiffs Have Been Injured by Defendants' RICO Violations ............................ 16

     F.     Plaintiffs State Claims Against Sorensen, Stockton & 65th LP and Stephen Foondos ................................ 17

     G.     State Law Claims Do Not Predominate Over the RICO Violations .................... 19

     H.     Defendants Cannot Justify *Colorado River* Abstention ............ 21

III.    CONCLUSION ................................................................................... 21

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1

## **TABLE OF AUTHORITIES CITED**

2

**Page**

**Cases**

3  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 126 S.Ct. 1991 (2006)........................17

4  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1255 (2007) ...............18

5  *Bodenner v. Graves*, 828 F. Supp. 516 (W.D. Mich.1993) ..........................................20

6  *Borough of West Mifflin v. Lancaster*, 45 F.3d 780 (3d Cir. 1995).............................20

7  *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000).....................18

8  *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614 (1988)...............20

9  *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 118 S.Ct. 523 (1997)........20

10  *Colorado River Water Conservation District v. United States*,
11      424 U.S. 800, 96 S.Ct. 1236 (1976) ....................................................................21

12  *Denevi v. LGCC, LLC*, 121 Cal.App.4th 1211 (2004).................................................13

13  *Diven v. Amalgamated Transit Union International and Local 689*,
        38 F.3d 598 (D.C. Cir. 1994) ...............................................................................21

14  *Doe v. United States Department of Justice*, 753 F.2d 1092 (D.C. Cir. 1985)........................3, 16

15  *Everest Investors 8 v. McNeil Partners*, 114 Cal.App.4th 411 (2003)........................14

16  *Executive Software No. America Inc. v. United States District Court (Page)*,
17      24 F.3d 1545 (9th Cir. 1994)...............................................................................20

18  *In re Finisar Corp. Derivative Litigation*, 542 F. Supp.2d 980 (N.D. Cal. 2008)........................15

19  *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
        896 F.2d 1542 (9th Cir. 1990)..............................................................................2

20  *Hamid v. Price Waterhouse*, 51 F.3d 1411 (9th Cir. 1995)........................................12

21  *Hamilton v. Willms*, 2005 WL 3797562 (E.D. Cal. 2005).........................................18

22  *Holmes v. Securities Investor Protection Corporation*,
23      503 U.S. 258, 112 S. Ct. 1311 (1992) .................................................................16

24  *Jara v. Suprema Meats, Inc.*, 121 Cal.App.4th 1238 (2004) ......................................13

25  *Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93 (1969) ...............................................13

26  *In re Kaplan*, 143 F.3d 807 (3d Cir. 1998).............................................................12

27  *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)...........................................3

28  *Massey v. Banning Unified School District*, 256 F.Supp.2d 1090 (C.D. Cal. 2003)................3, 16

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

*Mostowy v. United States*, 966 F.2d 668 (Fed. Cir. 1992)...........................................................2

*Oakland Raiders v. National Football League*, 93 Cal.App.4th 572 (2001)................................15

*Pareto v. FDIC*, 139 F.3d 696 (9th Cir. 1998) .....................................................................12, 13

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ......................................................................15

*Qwest Communications Corp. v. City of Berkeley*, 208 F.R.D. 288 (N.D. Cal. 2002)...................2

*R.J. Corman Derailment Services, LLC v. International Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643 (7th Cir. 2003) ...............................2

*Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469 (1997)........................................................18

*In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 9 (9th Cir. 1999) .............................15

*Smith v. Tele-Communication, Inc.*, 134 Cal.App.3d 338 (1982)...........................................13, 14

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410 (3d Cir. 1999) ...............................................................................................3

*Strigliabotti v. Franklin Resources, Inc.*, 398 F.Supp.2d 1094 (N.D. Cal. 2005) .........................2

*United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130 (1966)...........................................20

*United States v. Posada-Rios*, 158 F.3d 832 (5th Cir. 1998)........................................................18

*Wager v. Pro*, 575 F.2d 882 (D.C. Cir. 1976) .............................................................................2

### Statutes

Federal Rule of Civil Procedure 12(b)(6)................................................................................ 2-3

Federal Rule of Civil Procedure 12(c).................................................................................... 2-3

Federal Rule of Civil Procedure 23.1 ............................................................................. 1, 14-15

Federal Rule of Evidence 201 ....................................................................................................3

Internal Revenue Code § 1031 .......................................................................................9, 11, 19

18 U.S.C. § 1962(c) ..................................................................................................................18

18 U.S.C. § 1962(d) .............................................................................................................17-18

28 U.S.C. § 1367(c)(2)........................................................................................................ 19-20

### Other Authorities

Schwarzer, Tashima, and Wagstaffe, *Cal. Practice Guide: Federal Civil Procedure Before Trial*, § 9:230.......................................................................16

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

# I

## __INTRODUCTION__

Plaintiffs Natomas Gardens Investment Group LLC (Natomas) and Orchard Park Development LLC (Orchard) oppose the motion for judgment on the pleadings, or in the alternative, partial judgment on the pleadings, brought by defendants.[1]  Defendants misstate the facts alleged in the First Amended Complaint under the Racketeer Influenced and Corrupt Organizations Act, and related causes of action (FAC), apply incorrect legal standards for determination of the motion, and attempt to bolster their arguments with improper reference to disputed factual matters involved in a separate proceeding venued in Sacramento County Superior Court.[2]  Upon closer examination of the facts alleged in the FAC, including reasonable inferences drawn therefrom, the Court will determine that plaintiffs have proper standing to state claims in their individual capacities under the circumstances of this case, for damages which are proximately caused by defendants' actions.  State law claims do not predominate over the federal questions presented by the first two causes of action for violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) and RICO conspiracy violations, which are the primary claims raised by plaintiffs in this proceeding.  For the two derivative claims stated by plaintiffs, Counts Six and Eight, for professional legal and accounting malpractice, plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure (Rule) 23.1.  The particular claims against defendants Glenn Sorensen, Stockton & 65th LP, and Stephen Foondos are supported by appropriate factual allegations of RICO conspiracy liability.

Finally, defendants' argument for dismissal to avoid duplicative judgments fails for the same reasons asserted against the identical argument raised by defendant Larry Deane in his motion to dismiss, set for hearing with the instant motion.  Defendants offer no justification for

---

[1] The motion has been filed on behalf of all defendants represented by the Wegner law firm, which does not include defendants Stewart Title Company, Gus Galaxidas, Larry Deane, and Baljit and Harinder Johl.  In this opposition, plaintiffs refer to the moving parties as "defendants."

[2] Defendants expressly request that this Court not consider extrinsic evidence in support of the motion (see defendants' memorandum of points and authorities supporting motion, fn. 2, pages 4 and 5).  But, defendants' argument relies on disputed factual matters in the state court proceedings.  Plaintiffs object to those arguments (see separately filed Objections to Evidence) and request the Court not consider defendants' extrinsic evidence.

1    this Court to relinquish jurisdiction by reason of the separate state court proceedings.  The state

2    court action is focused on claims for dissolution of Natomas, involving primarily only Natomas

3    and its members, including Larry Deane.  Village Capital Group LLC and Vintage Creek LLC are

4    named as nominal defendants, as purported real parties in interest because they are not members

5    of Natomas.  It is erroneous and substantially misleading to characterize that limited action as an

6    appropriate forum for recovery on the extensive RICO fraudulent schemes and conspiracies

7    alleged in this action.

## II

## ARGUMENT

**A.    Procedural Legal Standards**

Motions brought under the provisions of Rules 12(b)(6) and 12(c) are virtually

interchangeable.  Both permit challenges directed at the legal sufficiency of the parties'

allegations, and the same standard applies to both motions.  See *Qwest Communications Corp. v.*

*City of Berkeley,* 208 FRD 288, 291 (N.D. Cal. 2002); *Strigliabotti v. Franklin Resources, Inc.*,

398 F.Supp.2d 1094, 1097 (N.D. Cal. 2005).  Judgment on the pleadings is appropriate when,

even if all material facts in the pleading under attack are true, the moving party is entitled to

judgment as a matter of law.  *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d

1542, 1550 (9th Cir. 1990); *R.J. Corman Derailment Services, LLC v. International Union of*

*Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003) (judgment

may not be granted "unless it appears beyond a doubt that the [non-moving] party cannot prove

any facts that would support his claim for relief").

A judgment on the pleadings is not proper where the complaint alleges facts

which, if proved, would permit recovery.  As with Rule 12(b)(6) motions, it is immaterial whether

the court believes plaintiff will succeed at trial.  *Wager v. Pro*, 575 F.2d 882, 884 (D.C. Cir.

1976).  The motion must be denied unless it appears "to a certainty" that no relief is possible

under any state of facts the plaintiffs could prove in support of their claim.  *Mostowy v. United*

*States*, 966 F.2d 668, 672 (Fed. Cir. 1992).

///

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1        A Rule 12(b)(6) motion, and accordingly a Rule 12(c) motion, will not be granted

2   merely because plaintiff requests a remedy to which he or she is not entitled.  "[I]t need not

3   appear that the plaintiff can obtain the *specific* relief demanded as long as the court can ascertain

4   from the face of the complaint that *some* relief can be granted."  *Doe v. United States Dept. of*

5   *Justice*, 753 F.2d 1092, 1104 (D.C. Cir. 1985) (emphasis in original); *Massey v. Banning Unified*

6   *School Dist.*, 256 F.Supp.2d 1090, 1092 (C.D. Cal. 2003).  Accordingly, a Rule 12(c) motion for

7   judgment on the pleadings cannot extend to granting relief for the moving parties on a theory that

8   some particular form of relief stated on the face of the complaint is unavailable.

9        Judicial notice is limited to facts not subject to reasonable dispute and either

10  "generally known" in the community, or "capable of accurate and ready determination" by

11  reference to sources whose accuracy cannot be reasonably questioned.  Federal Rule of

12  Evidence 201; see *Lee v. City of Los Angeles*, 250 F.3d 668, 688-690 (9th Cir. 2001).  Moreover,

13  if the Court takes judicial notice of another court's opinion, it may do so "not for the truth of the

14  facts recited therein, but for the existence of the opinion, which is not subject to reasonable

15  dispute over its authenticity." *Lee, supra,* at 690, *citing Southern Cross Overseas Agencies, Inc. v.*

16  *Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426-427 (3d Cir. 1999).  Accordingly, judicial

17  notice of another court's opinion can only be taken for the *fact* of the existence of the opinion, not

18  for the truth of the matters stated therein, which are subject to reasonable dispute.

19  **B.    Facts Alleged in the FAC**

20       Defendants base their arguments on a substantial misunderstanding and

21  misstatement of the facts alleged in the FAC.  For instance, defendants characterize the

22  allegations concerning the "Johl-Barnard-Sparks transactions" (FAC, ¶¶71-82) as simply a series

23  of loans by defendant Sinadinos back-and-forth among the Village and Vintage projects.  See

24  defendants' Memorandum of Points and Authorities Supporting Motion for Judgment on the

25  Pleadings (MPA) at 12:24-13:3.  Notably, defendants make no reference to the actual allegations

26  in the FAC concerning those transactions.  If they had bothered to study the facts in the FAC,

27  they would recognize the outcome of the Johl-Barnard-Sparks transactions--defendant John

28  Sinadinos used his shell game of loans to convert money belonging to the development projects

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1  into purported additional capital, belonging to him, in the amount of at least $700,000.  See FAC,

2  ¶80.  He literally took something that did not belong to him, moved it several times between

3  companies without any documentation of loans, and then claimed the substantial money belonged

4  to him.  His laundering of $700,000 through false tax reporting has also created a substantial tax

5  liability of plaintiff Natomas.  That money was income to Vintage, allocated to Natomas

6  according to its 45% membership interest, but Sinadinos claims the money is now part of his

7  equity stake in Village.  The net result is that Natomas is left with the tax burden of the $700,000

8  income, without any related assets.  This particular series of transactions highlights a key

9  component of the pattern of racketeering activities by defendant Sinadinos, the end result almost

10  invariably enriches him and directly harms plaintiffs.

11                    1.        **The Parties**

12            Natomas and Orchard are limited liability companies formed by Eric Solorio for

13  the purpose of obtaining rights to acquire and develop real property in Sacramento and Madera

14  Counties.  FAC, ¶¶43-45, 52, 53, and 59-61.  Natomas began as a sole member company in

15  August 2003, and Orchard has at all times been owned entirely by Mr. Solorio.  FAC, ¶¶13, 44.

16            Mr. Solorio sought financing sources for the development projects, and Larry

17  Deane introduced him to John Sinadinos.  FAC. ¶45.  Sinadinos told Solorio that he had

18  represented Donald Trump, currently represented Angelo Tsakopoulos, had vast expertise in the

19  financing of real estate development projects, with multimillion dollar projects under his control

20  and successfully completed, and promised that he would provide $4 million of initial financing

21  for the development projects.  FAC, ¶¶45-46, 57-58.  Sinadinos arranged for Angelo Tsakopoulos

22  to review and complement Mr. Solorio on the acquisition of purchase rights for nearly 40

23  properties, introduced Solorio to Stanley Foondos, CPA, who would ostensibly perform

24  customary accounting practices and tax reporting for the development projects, as well as

25  maintain proper financial records.  FAC, ¶¶49-51.  Sinadinos and Foondos successfully obtained

26  the commitment of Mr. Solorio to partner with them for assignment of his property acquisition

27  rights to Sinadinos, Foondos, and other companies they would form, in exchange for a promise of

28  ///

Barth Tozer & Timm llp
Attorneys at Law
Sacramento, California

00003421                                          - 4 -

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1  responsible financing, project accounting and proper income tax reporting for the development of

2  those properties.  FAC, ¶¶58, 61.

3          Sinadinos formed new companies under his control, associated with each

4  development project.  In Sacramento County, he formed Village Capital Group LLC and Vintage

5  Creek LLC.  FAC, ¶¶54, 56.  Each of those companies consists of two members, Natomas with a

6  45% membership interest, and another company created by Sinadinos with the majority, 55%

7  membership interest.  FAC, ¶¶12, 20, 23.  In the Village project, the 55% member company

8  formed by Sinadinos is designated Chi-Sac Village Capital Group Investors LLC, and Sinadinos

9  and Foondos hold controlling interests in that company.  FAC, ¶20.  In the Vintage project, the

10 55% member company formed by Sinadinos is designated Chi-Sac Vintage Creek Investors LLC,

11 and Sinadinos and Foondos hold controlling interests in that company.  FAC, ¶23.

12          Village Capital Group LLC is managed by a general partnership, South Watt &

13 Florin Partners, formed by Sinadinos and Foondos for this project, with Sinadinos as its managing

14 partner and the person responsible for management of the Village project.  FAC, ¶¶17, 19.

15 Vintage Creek LLC is managed by a general partnership, Caselman & Carlisle Partners, formed

16 by Sinadinos and Foondos for this project, with Sinadinos as its managing partner and the person

17 responsible for management of the Vintage project.  FAC, ¶¶18, 22.

18          All of the other limited liability companies and entities represented by the Wagner

19 law firm and included as moving defendants herein were companies and partnerships formed by

20 Sinadinos and Foondos and controlled by them in the conduct of all relevant transactions alleged

21 in the FAC.  See FAC, ¶¶23-30.  Throughout the complaint, there are numerous allegations of

22 checks written and signed by defendant Sinadinos on accounts held in the name of these other

23 entities, providing direct evidence that these other entities are essentially shell companies,

24 controlled and principally owned by Sinadinos and Foondos.  See, e.g., FAC, ¶¶62, 66, 97-99,

25 102-105, 111-116, 133-136.  The many facts alleged in the FAC concerning checks written by

26 Sinadinos from bank accounts held in the names of these various entities formed by Sinadinos

27 and Foondos support the allegation that all of the entities represented by the Wagner law firm are

28 ///

1   alter egos of defendants Sinadinos and Stanley Foondos, because the individuality and

2   separateness among all of the entities and Sinadinos and Foondos have ceased.  FAC, ¶210.

3   ### 2.   Pattern of Racketeering Activity

4   The FAC contains detailed allegations of multiple transfers of money by Sinadinos

5   and Foondos among the numerous entities, without the consent of Natomas required by the

6   operating agreements, usually in the form of Sinadinos writing checks on various accounts.

7   Stanley Foondos failed to keep customary accounting records and falsely characterized the

8   transactions on tax returns, as acts of tax evasion and witness tampering.  Neither of them kept

9   customary accounting records, and they both failed and refused to provide evidence of financial

10  accounting concerning the multiple transactions, whenever Mr. Solorio asked for such

11  information.  FAC, ¶¶68-70, 149-160.  The only evidence of "loans" made by Sinadinos among

12  all of the entities he controlled was the word "loan" written by him on many checks, without any

13  customary documents to evidence the transaction, such as promissory notes, deeds of trust, or

14  even any reconciliation statements.  See, e.g., FAC, ¶¶94, 98, 103-104, 111, 113, 146.

15  It is important to understand that the substantial sums of money being moved by

16  defendant Sinadinos, with the direct assistance of defendant Stanley Foondos, among these

17  various entities they controlled, did not belong to them and for the most part, had not been

18  contributed by them to the development projects.  Instead, the vast amount of money embezzled

19  by Sinadinos and Stanley Foondos for their own benefit, or used to artificially inflate their

20  purported capital accounts in the development projects, originated from deposits by homebuilders

21  in these projects. See generally, FAC, ¶¶83-89.  Over the course of time, KB Homes deposited in

22  excess of $6 million into escrow for the Village project, and Sinadinos arranged for all of that

23  money to be paid out of escrow and subjected to his control.  In the Vintage project, Tim Lewis

24  Communities (TLC) deposited approximately $4 million into escrow, and Sinadinos arranged for

25  all of that money to be paid out of escrow and subjected to his control.  TLC terminated its

26  involvement in the Vintage project in approximately May 2007, with no recourse for

27  reimbursement of the $4 million, and substantial amounts of that money remain subject to the

28  ///

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1   fraudulent schemes of embezzlement, bogus loans, and over-inflated capital accounts of

2   defendants Sinadinos and Stanley Foondos.  See FAC, ¶¶83-88, 91, 93-94, 117-119, 121, 133.

3          The significance of more than $10 million originating from KB Homes and TLC is

4   that Natomas is entitled in the first instance to the benefit of that money, to the extent of its 45%

5   membership interests in Village and Vintage, and the majority interest holder in each company is

6   entitled to the benefit of its 55% interest in those proceeds.  Instead of properly allocating the

7   benefit of those proceeds to Natomas, defendants fraudulently prepared and filed false tax returns,

8   failing to disclose any part of the millions of dollars invested by the homebuilders, and instead

9   fraudulently overstating their own investments in the development projects.  The fraudulent

10  accounting and false tax reporting by defendants have been part of their attempts to establish

11  defendants' ownership of the money that did not belong to them, reporting money received from

12  the homebuilders as a substantial part of defendants' artificially inflated, multimillion dollar

13  capital accounts.  See FAC, ¶¶161-164.  The false tax reporting by Sinadinos and Foondos is not

14  alleged solely to demonstrate the risk to Natomas of overdue taxes, penalties and interest, as

15  argued by defendants in their motion.  The false tax reporting is also alleged as predicate acts of

16  illegal tax evasion and money laundering, part of the continuing racketeering enterprises operated

17  by Sinadinos and Stanley Foondos, with the assistance of their co-conspirators.

18          Another specific example of unlawful tax evasion by Sinadinos and Stanley

19  Foondos occurred within days of the release of a deposit by TLC in the Vintage project.  On

20  August 1, 2005, the first deposits from TLC of approximately $1 million for release to the control

21  of Sinadinos.  FAC, ¶87.  On August 4, 2005, Sinadinos wrote three checks to himself and three

22  checks to Stanley Foondos from the Vintage Creek account, in the total amount of $25,000 to

23  each of them.  FAC, ¶165.  Sinadinos wrote each of those checks for less than $10,000, to avoid

24  the customary bank reporting to the IRS of money transfers, for the purpose of avoiding detection

25  of fraudulent transfers of TLC money to themselves.  FAC, ¶166.

26          The pattern of racketeering activities by defendants Sinadinos and Stanley

27  Foondos include several schemes for their personal enrichment.  There are occurrences of

28  defendants converting assets of the development companies not belonging to them, by ultimately

00003421                                    - 7 -

1   characterizing those amounts as substantial false additions to their capital accounts. FAC, ¶¶71-

2   80, 94-100, 102-105, 119-123, 131, 133.  The Johl-Barnard-Sparks transaction is a good example

3   of the use by defendants of project monies not belonging to them (in that instance approximately

4   $700,000) as a basis to artificially inflate their capital accounts.  Another good example occurred

5   immediately after TLC released its deposit of approximately $1 million to the control of

6   Sinadinos in the Vintage project.  See FAC, ¶133.  On August 2, 2005, Sinadinos wrote a check

7   on the Vintage Creek account in the amount of $25,000, made payable to his investment group

8   Chi-Sac Gap Investors.  *Ibid*.  On that same day, after depositing that amount in the Chi-Sac Gap

9   Investors account, he wrote a check in the amount of $25,000, made payable to Village Capital

10  Group LLC, with a note on that check of "capital contribution."  *Ibid*.  He deposited those funds

11  in the Village account, treating it as an addition to his capital account, thereby fraudulently

12  converting and laundering $25,000 of TLC money for his own personal, unlawful benefit.  *Ibid*.

13          There are occurrences of defendants siphoning off development company money

14  in acts of outright embezzlement, again taking money that did not belong to them.  FAC, ¶¶95,

15  106-107, 111-116, 133-136, 141, 144-147.  There are occurrences of defendants using company

16  assets to pay their personal staff, falsely characterizing them as "consultants" to the projects, and

17  to pay bills and other fees for their personal companies, which are unaffiliated with the

18  development projects.  FAC, ¶¶139-140, 143, 173-174.

19          Defendant Sinadinos paid himself approximately $354,000 in purported legal fees,

20  without a retainer agreement or any invoices to show the basis for those fees, and without the

21  knowledge of Natomas that such fees were being paid.  The "fee" disbursements by Sinadinos to

22  himself were usually paid in amounts of $25,000 and $50,000 at a time, raising the reasonable

23  inference that such payments are not justified by any particular attorney time records.  FAC,

24  ¶¶144-145, 167-172.

25          The consistent and continuing pattern of racketeering activities by defendants has

26  the uniform characteristic of resulting in their personal benefit.  Defendants Sinadinos, Stanley

27  Foondos, and their multiple alter ego companies conducted their racketeering activities for their

28  specific financial benefit, whether by direct receipt of money not belonging to them, or the use of

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1   company assets which they had not contributed to Village or Vintage, for the purpose of

2   fraudulently increasing their stated capital accounts in the companies.  The uniform fraudulent

3   financial benefit accrued to Sinadinos, Stanley Foondos, and the companies they controlled,

4   including the sole majority members of Village and Vintage, Chi-Sac Florin Vineyards Investors

5   LLC and Chi-Sac Vintage Creek Investors LLC, respectively.  Accordingly, the overwhelming

6   pattern of defendants' racketeering activity alleged by the FAC results in direct unlawful financial

7   benefits to defendants and corresponding, direct financial loss suffered by plaintiffs.  As minority

8   members of the development companies, plaintiffs are suing for recovery of the direct losses

9   caused by defendants as the majority interest holders.

10              **3.    Glenn Sorensen, Jr. and Stockton & 65th LP**

11              Defendant Glenn Sorensen, Jr. (Sorensen) holds a controlling interest in his limited

12  partnership, Stockton & 65th LP.  FAC, ¶¶33-34.  During mid-2004, defendant Sinadinos

13  proposed the investment by his friend Sorensen in the Village project of approximately $3 million

14  from an Internal Revenue Code Section 1031 exchange.  FAC, ¶72.  The investment proposed by

15  Sinadinos and Sorensen coincided with the irrevocable letter of credit by KB Homes to invest

16  more than $8 million in the Village project, which began with its first deposit of $2,243,575 into

17  escrow on November 9, 2004.  FAC, ¶71-72.  Sinadinos explained to Mr. Solorio that Sorensen

18  would be paid a return on his investment of 25% annually, including other highly favorable

19  provisions.  FAC, ¶73.  Sinadinos had previously stated to Solorio that a transaction of that type

20  would generally warrant a return on the investment of 6-8%, and the reasonable inference from

21  the transaction proposed for Sorensen was that Sinadinos and Sorensen were attempting to

22  accomplish a commercially unreasonable and preferential advantage for Sorensen and his

23  company, Stockton & 65th LP.  Solorio objected to the proposal.  FAC, ¶73.  Among his

24  objections, Solorio wanted to protect the existing agreement that excess monies resulting from an

25  investment in particular properties in the Village project would remain in the project, for the

26  benefit of other Village parcels.  *Ibid.*  Sinadinos and Sorensen made certain promises to obtain

27  Mr. Solorio's approval of the transaction, including a commitment that excess funds from the

28  Section 1031 exchange would remain in the Village project, and that Sorensen would give an

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1    option back to Village, for repurchase of the properties at the same price paid by Stockton & 65th

2    LP.  FAC, ¶¶74-76.[3]

3           After obtaining Mr. Solorio's agreement to the transaction by fraudulent means,

4    Sinadinos and Sorensen executed a different transaction.  Sinadinos and Sorensen directed Johl to

5    use the money he received from the investment by Sorensen to purchase the Barnard parcel, part

6    of the entirely separate Vintage project.  FAC, ¶77.  Sinadinos then took control of Vintage

7    Creek's net profit of approximately $837,287, directed a wire transfer from Vintage to the Village

8    project in the amount of $700,000, and transferred the rest of the Vintage profit to other

9    companies he controlled, Chi-Sac Gap Investors and Prime Minister Group LLC.  FAC, ¶¶78-79,

10   98-99.  The $700,000 wire-transferred by Sinadinos into the Village project was used for a

11   payment on real property known as the Sparks parcel.  FAC, ¶79-80.  Sinadinos and Stanley

12   Foondos subsequently used false tax returns to characterize the $700,000 as part of their capital

13   account in Village, rather than properly accounting for the proceeds by allocating the money for

14   the beneficial ownership of Natomas and the majority members, according to their percentage

15   interests.  FAC, ¶80.

16          Contrary to the original promise by Sorensen and Sinadinos, Sorensen never

17   entered into an agreement to option the properties he purchased from Village, the Johl and

18   Von Behren parcels, back to the Village project.  FAC, ¶82.  As a result, Sorensen and his

19   company, Stockton & 65th LP, facilitated the fraudulent transaction by Sinadinos, by which

20   Natomas assigned its purchase rights to the Johl and Von Behren parcels to Sorensen and his

21   company, without performance on the obligations by Sorensen.  FAC, ¶¶82, 160.

22          **4.    Stephen Foondos**

23          Defendant Stephen Foondos is an attorney, working with the Sacramento Legal

24   Group.  FAC, ¶¶122, 137.  During the summer of 2007, Stephen Foondos was involved in a

---

[3] Defendants have raised the issue of statute of limitations as a potential consideration in determining whether to dismiss plaintiffs' claims.  See defendants' MPA at 21:3.  Plaintiffs filed the complaint herein on September 29, 2008, four years after Natomas executed the assignment of the Johl parcel to Stockton & 65th LP, in reliance on the fraudulent promises by Sinadinos and Sorensen, detailed herein.  See FAC, ¶76.  The statute of limitations for a RICO action is four years, and accordingly, a dismissal of this action runs the risk of causing prejudice to plaintiffs' ability to pursue recovery for this particular alleged fraud.

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1   fraudulent transaction to induce the investment of $1.2 million in Section 1031 exchange money

2   by Margarida Leavitt.[4]  FAC, ¶¶119-120.  Stephen Foondos acted as counsel for Ms. Leavitt,

3   fraudulently misrepresenting the potential investment in the Vintage project as an investment in

4   an active residential real estate development project, with some level of guaranteed, excellent

5   financial return.  FAC, ¶120.  Mr. Foondos and Mr. Sinadinos did not disclose the truth about the

6   certain financial failure of the Vintage project when they were convincing Ms. Leavitt to invest

7   $1.2 million in Vintage; TLC had formally terminated their rights in May 2007, and any

8   reasonable investor would have considered that information as a dispositive indicator that an

9   investment in the project would be unwise.  FAC, ¶120.

10          Stephen Foondos actively facilitated the fraud against Ms. Leavitt while serving as

11   her attorney in the transaction with Sinadinos and his brother, Stanley Foondos.  FAC, ¶¶122-123.

12   Sinadinos used the net proceeds from the Leavitt investment, in the approximate amount of

13   $750,000, to embezzle, launder, and illegally reimburse their prior investments, without reducing

14   their stated capital accounts.  FAC, ¶123.  On August 4, 2007, immediately after completing the

15   Leavitt transaction, Sinadinos wrote a check in amount of $34,000, made payable to Stephen

16   Foondos' law office, as partial payment of a commission on the Leavitt transaction.  FAC, ¶137.

17   On that same day, Sinadinos wrote a separate check for $16,000, made payable to Stephen

18   Foondos, as a further commission to him.  *Ibid.*  On September 6, 2007, Stephen Foondos wrote a

19   check in the amount of $50,000 made payable to Village, which he and Sinadinos deposited in the

20   Village account, for the purpose of laundering the money he had received as a kickback from the

21   fraud perpetrated against Ms. Leavitt in the Vintage project.  FAC, ¶138.  On that same day,

22   Sinadinos wrote a check in the amount of $10,000 on a Village account, made payable to Stephen

23   Foondos, as a further kickback for his participation in the money laundering scheme.  *Ibid.*

24   **C.    Plaintiffs Properly State Individual Claims**

25          Defendants contend plaintiffs are only entitled to relief in a derivative lawsuit.

26   Their argument fails for two reasons: (1) they misunderstand and gloss over the factual

---

[4] Ms. Leavitt is an appropriate, necessary party to these proceedings, to achieve a complete resolution of the liability
exposure caused by defendants' fraudulent handling of this particular transaction.  Plaintiff Natomas will move for
Court approval of naming Leavitt as a necessary party, if appropriate after resolution of the pending motions.

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1   allegations in the FAC, and (2) they fail to acknowledge the legal distinctions between derivative

2   and individual claims.  The case cited by defendants in support of their argument is factually

3   distinct from this case.  See *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1419 (9th Cir. 1995).  The

4   *Hamid* decision concerned claims of bank depositors against 77 firms and individuals alleged to

5   have looted the bank for personal gain, but the bank itself was not named as a defendant.  *Ibid.*

6   The *Hamid* court properly determined that the claims of the bank depositors should properly have

7   been raised by the bank itself, or failing that, by the depositors in a derivative action on behalf of

8   the bank.  *Id.* at 1420.

9           As previously recited, plaintiffs suffered damages in their individual right.

10  Plaintiffs are the aggrieved minority interest holders suffering damages caused by majority

11  interest holders and managers of the real estate development companies.  Plaintiffs have suffered

12  particular harm, as a direct result of the specific, fraudulent benefits accruing to defendants,

13  including the principal defendants Sinadinos and Stanley Foondos and their alter ego companies

14  they created for management and holding majority interests in the projects.  Under these

15  circumstances, the development companies associated with each project have not suffered

16  damages which are separate and distinct from the individual damages suffered by plaintiffs.

17  Rather, defendants have operated the development companies as their RICO enterprises for the

18  purpose of achieving fraudulent financial gains for the distinct benefit of the majority interest

19  holders.

20          In the corporate context, a shareholder's action is "derivative" if the gravamen of

21  the complaint is injury to the corporation, or if it seeks to recover corporate assets or to prevent

22  their dissipation.  Where the injury is to the corporate assets as a whole, the injury to the value of

23  an individual stockholder's shares is deemed merely incidental to the direct injury to the

24  corporation's assets, which must be brought in a derivative action.  See *Pareto v. FDIC*, 139 F.3d

25  696, 699 (9th Cir. 1998).  Shareholders may maintain direct actions for injury to their interest as

26  shareholders, such as damage actions against controlling shareholders for breaching fiduciary

27  duties owed to minority shareholders.  See *In re Kaplan*, 143 F.3d 807, 811 (3d Cir. 1998).

28  ///

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1         An action may lie both derivatively and individually based on the same conduct.

2    The presence of an injury to the corporation does not necessarily negate the simultaneous

3    presence of an individual injury separable from his or her interests as a shareholder. *Pareto,*

4    *supra,* 139 F.3d at 699; *see also Denevi v. LGCC, LLC,* 121 Cal.App.4th 1211 (2004).

5         Where the gravamen of causes of action is injury to a minority shareholder or

6    member of a limited liability company, caused by the majority interest holder, a plaintiff may

7    bring the action in his or her individual capacity.  See *Smith v. Tele-Communication, Inc.,*

8    134 Cal.App.3d 338, 343 (1982); *Jara v. Suprema Meats, Inc.,* 121 Cal.App.4th 1238, 1257-1258

9    (2004).  After a review of case law regarding the distinction between individual and derivative

10   actions, the *Jara* court applied the test explained in the California Supreme Court decision of

11   *Jones v. H.F. Ahmanson & Co.,* 1 Cal.3d 93 (1969).  The *Jara* court said, "[l]ike the federal court

12   in *Pareto,* we read *Jones* as allowing a minority shareholder to bring a personal action alleging 'a

13   majority stockholder's' breach of a fiduciary duty to minority stockholders, which resulted in the

14   majority stockholders retaining a disproportionate share of the corporation's ongoing value." *Jara,*

15   *supra,* 121 Cal.App.4th at 1257-1258.  Finding the gravamen of the complaint in that case

16   concerned a claim that plaintiff therein was deprived of a fair share of the corporation's profits as

17   a result of defendants' generous payment of executive compensation to themselves, the court

18   allowed the individual claims to proceed.  *Id.* at 1258.  The court recognized that "the traditional

19   justification for requiring a derivative action is that 'it is designed to prevent a multiplicity of

20   actions by each individual shareholder and a preference of some more diligent shareholders over

21   others ....'"  *Ibid.*  But, the court observed the "objective of preventing a multiplicity of lawsuits

22   and assuring equal treatment for all aggrieved shareholders <u>does not arise at all when there is only</u>

23   <u>one minority shareholder</u>.  The objective of encouraging intra-corporate resolution of disputes and

24   protecting managerial freedom is *entirely meaningless where the defendants constitute the entire*

25   *complement of the board of directors and all corporate officers.*" *Id.* at 1259 (emphasis added).

26        The status of a plaintiff as a sole minority shareholder has been recognized in other

27   decisions as significant to the right to assert individual claims. See *Smith, supra,* 134 Cal.App.3d

28   at 342-344.  In the *Smith* decision, the court considered allegations by the sole minority

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1  shareholder against the majority shareholder for deprivation of his share of the company as a

2  result of a fraudulent violation of defendant's fiduciary duties during the sale of company assets.

3  *Smith, supra,* 134 Cal.App.3d at 341-342.  The *Smith* court found the gravamen of the causes of

4  action was injury to plaintiff as a minority shareholder, and the court also observed that a cause of

5  action based on fraud is individual and not representative in character.  *Id.* at 343.

6       Even the claims of a group of minority interest holders against the holders of a

7  majority interest in the company can be brought as individual claims.  See *Everest Investors 8 v.*

8  *McNeil Partners,* 114 Cal.App.4th 411 (2003).  The gravamen of the claims by minority partners

9  in *Everest Investors* was an injury to the interests of the limited partners and not the interests of

10  the general partner or to the defendant, McNeil Partnerships.  *Id.* at 428-429.

11       These authorities define the clear right of plaintiffs to state their claims in the FAC

12  in their individual capacities.  The gravamen of plaintiffs' claims is an injury to their particular

13  interests, not the interests of defendant Sinadinos, Stanley Foondos, or any of their multiple alter

14  ego companies, which are majority interest holders in the development projects.  Accordingly,

15  plaintiffs respectfully request an order of this Court, denying defendants' motion on the grounds

16  of derivative claims.

17  **D.**     **Plaintiffs Complied with the Requirements of Rule 23.1**

18       Plaintiffs raise two claims for recovery against defendants Sinadinos and Stanley

19  Foondos for professional legal and accounting malpractice, as derivative claims for the

20  development companies.  See FAC, Counts Six and Eight.  Those counts are stated as derivative

21  claims, to address the anticipated contentions by Messrs. Sinadinos and Foondos that they only

22  provided professional services at all times to the development companies.  Claims of professional

23  legal and accounting malpractice are separately stated in the individual right of plaintiffs, with

24  respect to the alleged liability of defendants Sinadinos and Foondos for having formed attorney-

25  client and accountant-client relationships directly with plaintiffs.  See FAC, ¶¶51-52, 64-65, and

26  Counts Five and Seven.

27       On its face, Rule 23.1 applies to derivative actions brought by "shareholders or

28  members of a corporation or an unincorporated association," raising the logical argument which

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

00003421

- 14 -

1   plaintiffs make in the first instance, that Rule 23.1 does not apply to this case, involving limited

2   liability companies.

3          Assuming for the sake of further argument that Rule 23.1 applies, "a shareholder

4   seeking to vindicate the interests of a corporation through a derivative suit must first demand

5   action from the corporation's directors or plead with particularity the reasons why such demand

6   would have been futile." *In re Finisar Corp. Derivative Litig.*, 542 F.Supp.2d 980, 987 (N.D.

7   Cal. 2008), *quoting In re Silicon Graphics Inc. Securities Litig.*, 183 F.3d 9 70, 989-90 (9th Cir.

8   1999).  The circumstances which make a demand futile are established by the laws of the state in

9   which the corporation is incorporated.  *Ibid.*  The test for proving demand futility under California

10  law is "whether the facts show a reasonable doubt that (1) the directors are disinterested and

11  independent, and (2) the challenged transaction was otherwise the product of a valid exercise of

12  business judgment."  See *Oakland Raiders v. National Football League*, 93 Cal App 4th 572, 587

13  (2001).

14          The facts alleged in the FAC uniformly show that the manager of the development

15  companies, defendant Sinadinos, is not "disinterested and independent," and the challenged

16  transactions cannot be justified as the "product of a valid exercise of business judgment."  Besides

17  the numerous factual allegations that provide evidence of these points, the basis for a

18  determination of futility of a demand is stated in the FAC.  FAC, ¶¶234, 244.

19          Defendants also argue that plaintiffs cannot meet the requirements of Rule 23.1(a),

20  for fair and adequate representation of the interests of similarly situated shareholders.  In the first

21  instance, a preliminary affirmative determination that the named plaintiffs will fairly and

22  adequately represent the interests of other class members is not a prerequisite to the maintenance

23  of the action.  See *Powers v. Eichen*, 229 F.3d 1249, 1254 (9th Cir. 2000).  In the present case,

24  this argument is largely meaningless.  There is effectively no class of other members similarly

25  situated with plaintiffs; as aptly observed by defendants, plaintiffs have been directly harmed by

26  the actions of the other members and managers of the development companies, defendants

27  Sinadinos, Foondos, and their alter ego companies.  Accordingly, the requirement that plaintiffs

28  fairly represent other members is factually irrelevant to these proceedings.  In fact, these very

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1   circumstances strongly support the argument that plaintiffs necessarily bringing their claims in

2   their individual capacities, as previously argued.

3   **E.**      **Plaintiffs Have Been Injured by Defendants' RICO Violations**

4               Defendants seek judgment on the RICO claims, arguing that the FAC fails to

5   demonstrate "some direct relation between the injury asserted and the injurious conduct alleged."

6   See *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 268, 112 S.Ct. 1311

7   (1992). The lengthy argument by defendants can be summarized as an attack on what they

8   characterize as "[T]he bulk of Plaintiffs' alleged damages occurred as a result of the lost value of

9   the successful real estate development projects ... Plaintiffs' claims entail a calculation of damages

10  based upon the amount of money that Plaintiffs would have received if development companies,

11  such as S&Y, would have entered into agreements with the Companies to develop the projects."

12  See defendants' MPA, at 12: 2-6. Defendants are only partially correct, in that part of the relief

13  requested by plaintiffs is the lost value of the development projects. See FAC, ¶¶198, 205. The

14  vast majority of allegations of specific wrongdoing by defendants, as previously recited herein,

15  involved the separate and distinct claims for relief, associated with the "money lost as a proximate

16  result of the conduct of a pattern of racketeering activity by defendants' enterprises," estimated to

17  exceed $3 million. See FAC, ¶¶199, 206. All of the substantial amounts of money alleged to

18  have been embezzled, unlawfully converted to defendants' overstated capital accounts, or illegally

19  applied for defendants' personal benefit, add up to the "money lost as a proximate result" of

20  defendants' conduct. Defendants misrepresent the specific nature of money damages to Natomas,

21  without rebutting the clear factual allegations of those particular damages on the face of the FAC.

22              Accordingly, plaintiffs seek several forms of relief, not just the alleged lost value

23  of the real estate development projects, which defendants argue as too speculative for recovery.

24  Defendants cannot challenge a particular form of relief requested by plaintiffs in the FAC "as

25  long as the court can ascertain from the face of the complaint that *some* relief can be granted."

26  *Doe*, *supra*, 753 F.2d at 1104 (emphasis in original); *Massey*, *supra*, 256 F.Supp.2d at 1092

27  (citing Schwarzer, Tashima, and Wagstaffe, *Cal. Practice Guide: Federal Civil Procedure Before*

28  *Trial*, § 9:230). The Court must deny defendants' motion on these grounds, if it can ascertain

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1   from the FAC that plaintiffs have stated any appropriate form of relief.  In the present case, the

2   multiple, detailed financial transactions alleged in the FAC, by which defendant Sinadinos,

3   Foondos, and their alter ego companies committed outright embezzlement, overstatement of their

4   capital accounts, and payment of their personal obligations with the use of company assets,

5   overwhelmingly demonstrate monetary damages particularly suffered by plaintiffs as a proximate

6   result of defendants' wrongdoing.  Those damages have been estimated to exceed $3 million.

7          Quite frankly, it is no wonder the real estate development projects lost actual

8   value, regardless of external market forces, under circumstances alleged in this case, involving

9   rampant, fraudulent abuse of project money, to which plaintiffs had ownership entitlement by

10   reason of their membership interest.  But for the dishonest partners, plaintiffs had many options to

11   sell its property acquisition rights to homebuilders and developers, as evidenced by the very

12   contracts with KB Homes and TLC to purchase Natomas contract rights.  Proof of the damages

13   caused by the loss of assets, and the resulting effect on the ability of these projects to meet

14   financial obligations, will be fairly straightforward.  Even a viable real estate development project

15   in a stable economy would be in serious jeopardy of failure after the unlawful diversion of

16   millions of dollars by managers like defendants.  Defendants Sinadinos and Foondos have been

17   caught with their hand in the cash register, and they should not be allowed to avoid liability by

18   arguing the bad economy.

19          Defendants' reference and reliance on the *Anza* decision is not helpful for the

20   Court's determination of this issue.  See *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 126 S.Ct.

21   1991 (2006).  The facts involved in that case, concerning a claim between competitors, relying

22   exclusively on a calculation of damages which could not be parsed from among other market

23   conditions, are completely different than the circumstances of this case.  The *Anza* decision is not

24   instructive here, because the damages claimed in this case include very definite monetary loss,

25   directly and proximately caused by defendants' conduct.

26   **F.    Plaintiffs State Claims Against Sorensen, Stockton & 65th LP and Stephen Foondos**

27          The claims stated by plaintiffs against Glenn Sorensen, Jr., Stockton & 65th LP,

28   and Stephen Foondos are based on RICO conspiracy liability under Title 18, United States Code

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1   Section 1962(d).  The test distilled by defendants for RICO conspiracy liability is incorrect.

2   Defendants argue the FAC must allege, or by inference demonstrate, "agreement by said

3   defendants to cooperate in the commission of two predicate acts."  See defendants' MPA, at

4   17:12-14, 18:9-10, and 18:20-23.

5              To be guilty of conspiring to commit a substantive RICO offense under Section

6   1962(d), one must knowingly agree to facilitate the activities of those who are operating the

7   enterprise in an illegal manner.  See *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 967

8   (7th Cir. 2000); *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998) (two or more

9   people must agree to commit substantive RICO offense and defendant must know of and agree to

10  overall objective of RICO offense); see also *Hamilton v. Willms*, 2005 WL 3797562 (E.D. Cal.

11  2005).  It is an agreement, not to operate or manage the enterprise, but to facilitate the activities of

12  those who do.  *Brouwer*, *supra*, 199 F.3d at 967.  The Supreme Court identified the test in a

13  unanimous decision, which held that a sheriff's deputy could be convicted of conspiracy under

14  Section 1962(d) for his role in a scheme that violated the federal bribery statute even though he

15  neither committed nor agreed to commit the predicate acts that are required for a substantive

16  violation of Section 1962(c).  *Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469 (1997).  The

17  *Salinas* court held that the "evidence showed that [the sheriff] committed at least two acts of

18  racketeering activity when he accepted numerous bribes and that [the deputy] *knew about and*

19  *agreed to facilitate the scheme*.  This is sufficient to support a conviction under Section 1962(d)."

20  *Salinas*, 522 U.S. at 66, 118 S.Ct. at 477.

21             The appropriate test for RICO conspiracy liability does not require the specific

22  agreement of the conspirator to cooperate in the commission of two specific, predicate acts, as

23  argued by defendants.  The facts alleged in the FAC, and reasonable inferences drawn from those

24  facts, must state a claim "that is plausible on its face," that defendants knew about and agreed to

25  facilitate the activities of defendants Sinadinos and Foondos.  Cf. *Bell Atlantic Corporation v.*

26  *Twombly*, 550 U.S. 544, 127 S.Ct. 1255, 1965-1966 (2007) (pleading standard for unlawful

27  conspiracy in restraint of trade).

28  ///

1    As previously recited, the allegations against Glenn Sorensen, Jr., Stockton & 65th

2    LP, and Stephen Foondos meet this test.  Sorensen and his company were intimately involved in

3    the Johl-Barnard-Sparks transactions, even to the point of directing the transfer of Section 1031

4    exchange funds from Village to Vintage, in violation of the agreements he and defendant

5    Sinadinos made with Mr. Solorio.  Sorensen and his company not only facilitated the activities of

6    defendant Sinadinos, but he directly assisted in those activities.  The circumstances of the

7    unusually favorable terms obtained by Sorensen (a partner with Sinadinos in other ventures) and

8    his company, his direct participation in completion of the fraudulent scheme, and his outright

9    failure to perform the obligation of granting an option back to the Village project support the

10   reasonable inferences that he knowingly agreed to facilitate the activities of defendant Sinadinos.

11   Stephen Foondos was also directly engaged in the fraudulent transaction

12   perpetrated by defendants against the Vintage investor, Leavitt.  He served as the investor's

13   attorney, and actively misrepresented the economic viability of the Vintage project to his client

14   for the purpose of facilitating the investment of $1.2 million into the already-failing project, so

15   that his brother Stanley Foondos and Sinadinos could fraudulently transfer approximately

16   $750,000 of the Leavitt investment to Village.  Immediately after attorney Stephen Foondos

17   directly facilitated the fraud on his own client, he accepted two separate payments from Sinadinos

18   as a $50,000 commission for his assistance in the scam.  And then one month later, Stephen

19   Foondos "invested" the $50,000 of laundered money in the Village project, and accepted a further

20   kickback from Sinadinos of $10,000.  This particular fraudulent transaction against Leavitt was

21   also *specifically admitted as a fraud by Sinadinos to Mr. Solorio*, prompting the start of

22   Mr. Solorio's efforts to investigate and correct defendants' wrongdoing.  See FAC, ¶148.  Under

23   these circumstances, the allegations against Stephen Foondos showed that he knew about and

24   agreed to facilitate the illegal activities by his brother and Sinadinos.

25   **G.    State Law Claims Do Not Predominate Over the RICO Violations**

26   Defendants next argue for judgment under the provisions of Title 28 United States

27   Code Section 1367(c)(2), on a theory that state law claims in this case predominate over the

28   federal question.  They concentrate their argument on drawing a comparison to the decision in

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1   *Bodenner v. Graves*, 828 F.Supp. 516 (W.D. Mich.1993), as defendant Deane attempts in his own

2   motion to dismiss.  The particular issues and claims in the present case do not justify dismissal or

3   judgment against the state law claims subject to supplemental jurisdiction.

4            The Court may decline to exercise supplemental jurisdiction over state law claims

5   by authority of Title 28 United States Code Section 1367(c).  See *United Mine Workers v. Gibbs*,

6   383 U.S. 715, 86 S.Ct. 1130 (1966); *Carnegie-Mellon University v. Cohill*, 484 U.S. 343,

7   108 S.Ct. 614 (1988).  Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right.

8   *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172, 118 S.Ct. 523, 533

9   (1997).  Some decisions have held that because Section 1367(c) enumerates grounds upon which

10  supplemental jurisdiction may be declined, federal courts must exercise supplemental jurisdiction

11  in the absence of one of the enumerated factors.  See *Executive Software No. America Inc. v.*

12  *United States District Court (Page)*, 24 F.3d 1545, 1556-1557 (9th Cir. 1994).

13           The "substantially predominates" standard of Section 1367(c)(2) comes from the

14  Supreme Court decision in *Gibbs*.  When a District Court exercises its discretion not to hear state

15  claims under the "substantially predominates" standard, the advantages of a single suit are lost.

16  See *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995).  "This will normally

17  be the case only where 'a State claim constitutes the real body of the case, to which the federal

18  claim is only an appendage,' [citation omitted] only where permitting litigation of all claims in the

19  district court can accurately be described as allowing a federal tail to wag what is in substance a

20  state dog."  *Borough of West Mifflin*, *supra*, 45 F.3d at 789, *citing Gibbs*, 383 U.S. at 727,

21  86 S.Ct. at 1140.  "The 'substantially predominates' standard, however, is not satisfied simply by a

22  numerical count of the state and federal claims the plaintiff has chosen to assert on the basis of

23  the same set of facts.  An analysis more sensitive to the relevant interests is required."  *Borough*

24  *of West Mifflin*, *supra*, 45 F.3d at 789.

25           The *Bodenner* decision does not provide a useful standard for this Court.  The

26  Michigan district court decision in that case nearly exclusively relied on a numerical count of the

27  state and federal claims for its decision, stating in part, "certainly 28 state counts out of a 29 count

28  complaint rises to the level of state law predominance."  *Bodenner*, *supra*, 828 F.Supp. at 519.

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1   The mere coincidence that the district court in *Bodenner* also dismissed the one RICO claim is

2   not a helpful precedent for this case.  See *Ibid.*  It has been recognized that the "relative weakness

3   of a federal claim and concomitant primacy of state law issues" can be considered by a court in

4   deciding whether the state law claims predominate.  See *Diven v. Amalgamated Transit Union*

5   *International and Local 689*, 38 F.3d 598, 602 (D.C. Cir. 1994).  But, those characteristics are not

6   relevant to this case.

7           The state law issues in the present case do not predominate over the federal claims

8   under RICO and RICO conspiracy causes of action.  The primary claims against defendants

9   involve an elaborate financial scheme of fraudulent transactions involving investors from Chicago

10  (FAC, ¶¶58, 191) and concern multiple undocumented "loans," double payments to themselves

11  and their alter ego companies, false tax reporting, and illegal co-mingling and embezzlement of

12  development project money.  The continuous thread of wrongdoing in this case fits squarely

13  within the definition of RICO racketeering enterprises, with predicate acts of interstate mail and

14  wire fraud, tax evasion, money laundering, interstate travel in aid of a racketeering enterprise, and

15  witness tampering.

16  **H.      Defendants Cannot Justify *Colorado River* Abstention.**

17          Defendants attempt to join the argument by defendant Larry Deane for application

18  of abstention under the doctrine of *Colorado River Water Conservation Dist. v. United States*,

19  424 U.S. 800, 96 S.Ct. 1236 (1976).  Plaintiffs respectfully request the Court reject defendants'

20  argument for the reasons cited in opposition to Mr. Deane's argument.  Defendants cannot

21  demonstrate the exceptional circumstances to apply abstention.

22                                              **III**

23                                        **CONCLUSION**

24          For the foregoing reasons, plaintiffs respectfully request an order by the Court

25  denying defendants' motion for judgment on the pleadings.  Defendants pay very little attention to

26  the detailed factual allegations in the FAC and thereby misconstrue important facts and

27  reasonable inferences in the case.  Plaintiffs properly state individual claims, seeking recovery of

28  particular damages proximately caused by the racketeering activities of defendants.  The FAC

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1   states appropriate claims against co-conspirators of defendants Sinadinos and Stanley Foondos,

2   Sorensen, Stockton & 65th LP, and Stephen Foondos.  Plaintiffs have satisfied all procedural

3   requirements for bringing this action, and no reasonable basis exists for abstention or

4   discretionary dismissal or judgment against claims subject to supplemental jurisdiction.

5   Dated:  April 3, 2009.                          BARTH TOZER & TIMM LLP

6

7                                                   By _____

8                                                        THOMAS W. BARTH

9                                                   Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA

1

**PROOF OF SERVICE**

2        I, Sheryl A. Pereda, declare:

3        I am a resident of the State of California, over the age of 18 years, and not a party to the within action; my business address is 431 I Street, Suite 201, Sacramento, California 95814. On April 3, 4    2009, I served the within document:

5    **OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, PARTIAL JUDGMENT ON THE PLEADINGS**

6
☐      by transmitting via facsimile from (916) 440-9610 the above listed document without error
7        to the facsimile numbers set forth below on this date.
☐      by scanning and transmitting the above listed document as a PDF attachment to a message
8        directed to the person named below at the email address listed below.
☐      by placing the document listed above in a sealed envelope with postage thereon fully
9        prepaid, in the United States mail at Sacramento, California, addressed as set forth below.
☐      by causing the document listed above to be delivered via FEDERAL EXPRESS
10       OVERNIGHT DELIVERY to the persons at the addresses set forth below.
☑      by causing personal delivery of the document listed above to the persons at the addresses
11       set forth below.

12   Donald M. Wanland, Jr. (don@lowands.com)          Carl P. Blaine (cblaine@wkblaw.com)
     Jason W. Burgess (jburgess@lowands.com)           Eric Garner (egarner@wkblaw.com)
13   LAW OFFICES OF WANLAND & SPAULDING                WAGNER KIRKMAN BLAINE KLOMPARENS
     705 University Avenue                              & YOUMANS LLP
14   Sacramento, CA 95825                               10640 Mather Boulevard, Suite 200
     916-568-6000; Fax 916-568-6009                     Mather, CA 95655
15                                                      916-920-5286; Fax 916-920-8608

16   Robert D. Collins (BCollins@CVMLaw.com)           Richard M. Watts, Jr. (rwatts@mpwlaw.net)
     CVM LAW GROUP, LLP                                 MILLSTONE PETERSON & WATTS, LLP
17   8795 Folsom Blvd., Suite 200                       2267 Lava Ridge Court, Suite 210
     Sacramento, CA 95826                               Roseville, CA 95661
18   916-381-6171; Fax 916-381-1109                     916-780-8222; Fax: 916-780-8775

19   Stephen J. Beede (sjbeede@bpelaw.com)             Patrick J. Waltz (Waltzlaw@sbcglobal.net)
     BPE LAW GROUP, INC.                                WALTZ LAW FIRM
20   11140 Fair Oaks Blvd., Suite 300                   2022 28th Street
     Fair Oaks, CA 95628                                Sacramento, California 95818
21   916-966-2260; Fax: 916-966-2268                    916-454-0904; Fax: 916-454-0909

22       I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the United States Postal Service on that same 23   day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than 24   one day after date of deposit for mailing in affidavit.

25       I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that this was executed on April 3, 2009, at Sacramento, California.
26
27                                                   _____
                                                     SHERYL A. PEREDA
28

00003421

BARTH TOZER & TIMM LLP
ATTORNEYS AT LAW
SACRAMENTO, CALIFORNIA