1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10                                  ----oo0oo----

11

12   NATOMAS GARDENS INVESTMENT
     GROUP LLC, a California
13   limited liability company,
     ORCHARD PARK DEVELOPMENT LLC,
14   a California limited liability
     company,
15                                          NO. CIV. S-08-2308 FCD/KJM

16         Plaintiffs,

17      v.                                  MEMORANDUM AND ORDER

18   JOHN G. SINADINOS, STANLEY J.
     FOONDOS, STEPHEN FOONDOS, et
19   al.,

20

21         Defendants.

22                                  ----oo0oo----

23        On June 1, 2009, defendant Larry Deane ("Deane") filed a

24   counterclaim against plaintiff/counter-defendant Natomas Gardens

25   Investment Group, LLC ("Natomas") and third-party claim against

26   third-party defendant Eric Solorio ("Solorio"), a shareholder in

27   Natomas.  Therein, Deane, also a shareholder in Natomas, alleges

28   individual claims for express indemnity, breach of contract,

                                       1

implied indemnity, and equitable indemnity against Natomas and Solorio, as well as shareholder derivative claims on behalf of Natomas against Solorio for breach of fiduciary duty, breach of contract and the implied covenant of good faith and fair dealing and intentional interference with prospective economic advantage. (Docket #125.)

This matter is now before the court on Deane's motion to disqualify the law firm of Barth, Tozer & Timm ("Barth") as counsel for plaintiff/counter-defendant Natomas in this action;[1] Deane also seeks a ruling precluding Barth from representing Solorio in this action and in a related state court action. Deane contends disqualification is required because Natomas' and Solorio's interests are adverse in this action due to Deane's assertion of derivative claims on behalf of Natomas against Solorio, and thus, Barth's simultaneous representation of them is unethical and in violation of California law.  Barth opposes the motion, arguing that Deane's counter- and third-party claim is so frivolous that the court should dismiss Deane's claims against Natomas and Solorio, thereby mooting any alleged conflict between the parties or, alternatively, permit Barth to "cure" the conflict of interest by withdrawing as Solorio's counsel.[2]

---

[1]   Deane did not assert a counterclaim against plaintiff Orchard Park Development LLC ("Orchard Park"), also represented by Barth, and he does not move to disqualify Barth from representing Orchard Park.  Thus, nothing herein precludes Barth from continuing to represent Orchard Park in this action.  As set forth below, Orchard Park asserts the same claims for relief against defendants as does Natomas. (2nd Am. Compl., filed June 1, 2009.)

[2]   Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

1   For the reasons set forth below, the court GRANTS in part
2   and DENIES in part Deane's motion to disqualify Barth from
3   representing Natomas and Solorio.

4   **BACKGROUND**

5   This case originally arose out of a failed business venture
6   between Solorio and Deane, and their various alleged co-
7   conspirators.  As alleged in Natomas' and Orchard Park's second
8   amended complaint ("SAC"), beginning in 2003, Solorio negotiated
9   to obtain rights to purchase undeveloped real property from
10   several property owners in the Sacramento area.  (SAC, filed June
11   1, 2009, ¶ 44.)  Solorio endeavored to subsequently develop and
12   sell this land, for which he formed a limited liability company,
13   Natomas.  (Id. at ¶ 45.)  In seeking financing for his potential
14   project, Solorio met defendants Deane and John Sinadinos
15   ("Sinadinos").  (Id. at ¶ 46.)  Sinadinos recommended that
16   Stanley Foondos, a certified public accountant, support Solorio's
17   proposed development project through performance of all
18   accounting and tax reporting responsibilities.  (Id. at ¶ 52.)

19   By the end of 2003, Solorio, acting on behalf of Natomas,
20   had assembled purchase rights to a number of contiguous parcels
21   in the Sacramento area, upon which Sinadinos made the necessary
22   deposits in escrow.  (Id. at ¶ 53.)  By mid-2004, Natomas had
23   obtained rights to purchase and develop fourteen parcels of land
24   in Sacramento county comprising approximately 109 acres.  (Id. at
25   ¶ 54.)  This development project was designated Florin Vineyards,
26   and Sinadinos formed a limited liability company, Village Capital
27   Group LLC ("Village"), as the development company associated with
28   the project.  (Id. at ¶¶ 54-55.)  Natomas was given a 45 percent

3

stake in Village, while the other 55 percent was held by Chi-Sac
Village Capital Group Investors LLC ("Village Investors LLC"), a
company managed and controlled by Sinadinos and Stanley Foondos.
(Id. at ¶¶ 12, 20.)  In October 2004, Solorio bought an
additional 85 acres.  The development project was named Vintage
Creek, and Sinadinos formed another limited liability company,
Vintage Creek LLC, to be associated with the project.  (Id. at
¶ 57.)

Additionally, during April-May 2005, Solorio assembled
property acquisition rights for a development project located in
Madera County, California.  (Id. at ¶ 61.)  Solorio, acting
through his own limited liability company, Orchard Park,
negotiated and executed five option agreements to purchase
contiguous parcels of real property comprising approximately 265
acres. (Id.)  Acting upon Sinadinos' representations as to his
substantial development experience, Solorio agreed to include
Sinadinos as a shareholder of Madera Avenue 12 Capital Group LLC
("Madera"), a limited liability company formed for the
development of the Madera properties.  (Id. at ¶ 62.)

According to Deane, "the basic structure of each company was
identical.  Natomas was to assign the various purchase agreements
to the two LLC's (Vintage and Village), and provide the sweat
equity with respect to entitlements, and the Chi-Sac groups were
to provide the capital necessary to make the non-refundable down-
payments on the various parcels, in amounts of up to $4 million
for each project." (Counter- and Third-Party Claim, filed June
1, 2009, at ¶ 9.)  Deane further alleges that Natomas is
"comprised of two "camps" of persons, those aligned with Solorio

4

and those who are the friends and family of Deane." (Id. at ¶ 10.)   Deane and Solorio comprise the majority of the shares in Natomas; Deane representing a 34.28% interest and Solorio representing a 57.13% interest as the former managing member. (Id. at ¶ 11.)   The remaining 8.59% is divided between 12 other investors who are not controlling members.   Two of the investors are aligned with Solorio, and the remaining ten are Deane's friends and family. (Id.)

When Natomas was in full operation, Solorio managed the daily operations but required Deane's consent as the other major shareholder for more "significant operational decisions." (Id. at ¶ 12.)   Deane alleges that Vintage and Village were also managed through this same operational structure, with Natomas being the controlling branch from which consent was required for any significant transactions. (Id. at ¶ 13.)

Deane alleges that the business relationship between himself and Solorio began to deteriorate around October 2007. (Id. at ¶ 18).   Further, Deane asserts Solorio became less interested in the progress of what was becoming a failed business venture as a result of the downturn in the economy and began seeking a buy out of his interests in Natomas. (Id.)   Around this same time, Solorio retained Barth who had no prior association with either Solorio, Natomas, or any of the other Natomas shareholders. (Id.)

Deane became suspicious of Solorio's attempt to secure a buy out.   He claims Solorio continually sought to obstruct Natomas' business with frivolous investigations; he defamed members of Natomas and the other related LLCs; and he sabotaged potential

1   investment deals.  (Id. at ¶ 19.)  Deane alleges Solorio and

2   Barth began investigating misconduct by members of the LLCs,

3   which not only wasted valuable resources, but also cost Natomas

4   necessary capital in the form of lost investment opportunities.

5   (Id.)

6        Natomas and Orchard Park filed the original complaint in

7   this court on September 29, 2008; however, that complaint was

8   never served and plaintiffs thereafter filed and served a first

9   amended complaint on November 4, 2008, alleging claims against

10  defendants for individual violations of the Racketeer Influence

11  and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq.("RICO"),

12  RICO conspiracy, fraud, breach of fiduciary duty, professional

13  legal malpractice, professional accounting malpractice, and

14  conversion.  Plaintiffs also sought a petition for writ of

15  mandate to compel inspection of records.  (FAC at ¶¶ 192-251.)

16  As the majority shareholder of Natomas, Solorio states that due

17  to the expiring statute of limitations, and the potential risk

18  that inaction could cause harm to Natomas, he was compelled to

19  retain Barth as counsel for Natomas in this action.  (Opp'n to

20  Mot. to Disqualify, filed Aug. 7, 2009, at 6.)

21       On October 21, 2008, Deane filed suit against Solorio and

22  Natomas, among others, in Sacramento County Superior Court

23  (sometimes referred to herein as the "State Court Action") and

24  served an amended complaint against the parties on October 30,

25  2008.  In that action, Deane alleges claims for involuntary or

26  voluntary dissolution of Natomas and breach of fiduciary duties

27  by Solorio and others.  (Barth Decl., filed Aug. 7, 2009, at ¶ 5,

28  Ex. C.)  Barth initially represented Solorio in the State Court

Action, but because of its involvement with Natomas in this
action, Barth later accepted representation of Natomas in the
State Court Action as well.

In the State Court Action, Deane filed an ex parte
application for appointment of receiver for Natomas on November
20, 2008.  The state court granted the motion on December 19,
2008, citing Deane and Solorio's complete "inability to work
together," and on March 12, 2009, the court appointed Scott
Sacket as the receiver for Natomas.  (Opp'n RJN, filed August 7,
2009, Ex. 6 at 2.)

Thereafter, Deane moved the state court to disqualify Barth
as counsel for Natomas and Solorio in both the State Court Action
and in this action.  Deane argued disqualification was mandated
because an attorney who represents a corporate entity (Natomas)
is automatically disqualified from representing its principals,
especially in situations involving allegations of fraud and
corporate dissolution.  (Id.)  On May 26, 2009, the state court
granted Deane's motion to disqualify Barth from further
representation of Natomas, but found that Barth could continue to
represent Solorio in state court because there was no evidence
that the prior dual representation resulted in any prejudice to
the parties.  (Id. at 3.)  The state court ordered the receiver
to obtain independent counsel for Natomas.  (Id.)  The state
court declined to consider Deane's request to disqualify Barth
from this action, stating that it lacked authority to make such a
ruling.

On August 3, 2009, the state court discharged the receiver
because Deane failed to comply with a July 6, 2009 order

1  directing him to pay all funds requested by and owed to the

2  receiver.  (Opp'n RJN, Ex. 7 at 1.)  The state court then stayed

3  the State Court Action pending resolution of these proceedings.

4  (Id. at Ex. 10 at 1.)

5      While the above matters took place in state court, various

6  defendants in this action filed motions to dismiss plaintiffs'

7  FAC.  After this court granted in part and denied in part the

8  various motions (Docket #123), giving plaintiffs leave to file a

9  second amended complaint,[3] Deane filed the subject counter- and

10 third-party claim against Natomas and Solorio, asserting:

11 (1) individual claims for express indemnity and breach of

12 contract against Natomas; (2) implied indemnity and equitable

13 indemnity claims against Solorio; and (3) three shareholder

14 derivative claims against Solorio on behalf of Natomas.  (Docket

15 #125.)  The derivative claims allege breach of fiduciary duty,

16 breach of contract and the implied covenant of good faith and

17 fair dealing and intentional interference with prospective

18 economic advantage.  (Id.)  Barth accepted service of the

19 counter- and third-party claim on behalf of Natomas and Solorio.

20 However, Barth answered Deane's claim and filed a counterclaim

21

22     [3]   In said complaint, plaintiffs allege federal claims for
   relief for violation of RICO and state law claims for fraud,
23 breach of fiduciary duties, professional legal malpractice,
   professional accounting malpractice, conversion and for writ of
24 mandate to compel inspection of records.  Defendants have filed
   various motions to dismiss in response thereto; said motions are
25 currently set to be heard October 16, 2009.  However, due to the
   stay entered by this court and in order to give Natomas' new
26 counsel adequate time to respond, said motions will be continued
   to January 15, 2010.  If new counsel for Natomas is retained
27 quickly and the parties wish to hear these motions at an earlier
   time, they may file a stipulation and order advancing the hearing
28 to an available law and motion date in 2009.

8

1  against Deane on behalf of Natomas only.  (Docket #153.)  Solorio

2  answered Deane's third-party claim against him in *pro per*.

3  (Docket #152.)

4                              **ANALYSIS**

5       At the time Deane filed the instant motion to disqualify,

6  Barth represented Natomas in this action and Solorio in the State

7  Court Action.  Deane contends that this joint representation of

8  the parties violates California law because due to Deane's

9  shareholder derivative claims brought on behalf of Natomas

10 against Solorio, Natomas' and Solorio's interests are adverse and

11 Solorio cannot waive the conflict of interest on behalf of

12 Natomas.[4]  Barth opposes the motion, arguing primarily that

13 (1) the court should consider the merits of Deane's counter- and

14 third-party claim and find that it is frivolous, thereby mooting

15 the alleged conflict of interest and rendering consideration of

16 the motion to disqualify unnecessary, and (2) if the court

17 reaches the motion to disqualify, Barth can "cure" the conflict

18 of interest by withdrawing as Solorio's counsel in the State

19 Court Action.

20      **I.   <u>Applicable Standards</u>**

21      Barth contends that the court may properly deny the motion

22 to disqualify because the allegations of Deane's counter- and

23 third-party claim are wholly frivolous.  Barth asserts that under

24 federal law, this court can assess the merits of Deane's claim

25 ────────────────────

26      [4]   At times, Deane suggests that Barth's representation of
   Natomas and Solorio violated ethical rules from the inception of
27 this case.  However, the court does not rule on that issue herein
   since the basis for the instant motion is the alleged conflict of
28 interest which arose as a result of Deane's assertion of
   derivative claims on behalf of Natomas against Solorio.

against Natomas and Solorio in the context of ruling on the

disqualification motion.  The cases relied upon by Barth,

however, are not persuasive because the authorities are either

inapplicable or directly contradict its contentions.  For

example, the <u>Hausman</u> case, cited by Barth, involved a shareholder

derivative action where the court had to determine whether the

shareholder's right to bring such an action was "substantive,"

thus bringing choice of law rules into play.  <u>Hausman v. Buckley</u>,

299 F.2d 696 (2d Cir. 1962).  The case did not involve a

disqualification motion nor did it address the more specific

issue of whether a court should consider the substantive merits

of a pleading in assessing whether disqualification of counsel is

warranted.  <u>Hausman</u> is thus wholly inapplicable to this case.[5]

Barth also cites <u>Lewis v. Shaffer Stores Co.</u>, 218 F. Supp.

238 (S.D.N.Y. 1963).  Barth maintains this case supports its

contention that in deciding a motion to disqualify, a court

should consider the substantive merits of the party's claim

allegedly giving rise to the conflict.  However, the court in

<u>Lewis</u> indicates just the opposite.  The court held:

> The interests of the officer, director and majority
> shareholder defendants in this action are clearly
> adverse, *on the face of the complaint*, to the interests

---

[5]   Similarly, Barth's citation to <u>In re Oracle</u> is also
inapposite.  Like <u>Hausman</u>, that case did not involve a motion for
disqualification or any discussion of the propriety of
considering the merits of a party's pleading to assess whether an
actual conflict of interest exists.  <u>In re Oracle Sec.</u>
<u>Litigation</u>, 829 F. Supp. 1176, 1179 (N.D. Cal. 1993).  Rather, in
<u>In re Oracle</u>, the court considered whether a proposed settlement
agreement in a joint derivative and class action suit was
stipulated to in a fair manner; in the course of that inquiry,
the court took into consideration the fact that Oracle's in house
counsel represented both the company and the defendant
principals.  <u>Id.</u>

of the stockholders [of the company] other than defendants.  I have no doubt that [the conflicted law firm] believe[s] that there is no merit to this action. Plaintiff, of course, vigorously contends to the contrary. *The court cannot and should not attempt to pass upon the merits at this stage*.

Id. at 239-40 (emphasis added).

Barth has not cited any authority to support the proposition that this court should evaluate the substantive merits of Deane's claim against Natomas and Solorio in the context of a motion to disqualify.  And, the authority on point, supports the opposite conclusion.  In <u>Lewis</u>, the court held that whether the interests of the parties are adverse should be determined on the face of the complaint rather than through an examination of the underlying merits of the derivative action.  This court finds <u>Lewis</u> persuasive and consistent with the case law discussed below addressing disqualification motions in the context of shareholder derivative claims.  Thus, the court considers here only the allegations of Deane's counter- and third-party claim to ascertain whether an actual conflict of interest was created by Deane's assertion of shareholder derivative claims on behalf of Natomas against Solorio.[6]

---

[6]   Because the court finds that consideration of the substantive merits of Deane's counter- and third-party claim is not appropriate at this juncture, it has disregarded the parties' arguments on the merits of Deane's claim.  Both sides submitted lengthy arguments and extensive declarations to support their respective *factual* contentions in this case.  Those arguments are not relevant to the motion.  Additionally, Barth makes certain procedural objections to Deane's pleading, arguing it does not sufficiently allege a derivative claim pursuant to Fed. R. Civ. P. 23.1.  Again, that issue goes to the merits of Deane's pleading, and while an appropriate argument for a Fed. R. Civ. P. 12(b)(6) motion, it is not an argument this court must address in the context of a disqualification motion.

11

1        **II.  <u>Actual Conflicts in Derivative Suits</u>**

2        In determining motions for disqualification, the court

3   applies the applicable state law.  <u>In re County of Los Angeles</u>,

4   223 F.3d 990, 994 (9th Cir. 2000); E.D. Cal. L.R. 83-

5   180(e)(adopting California's standards of professional conduct

6   and providing that the American Bar Association's Model Rules of

7   Professional Conduct may be considered for guidance).

8   "Ultimately, disqualification motions involve a conflict between

9   the clients' right to counsel of their choice and the need to

10  maintain ethical standards of professional responsibility." <u>UMG</u>

11  <u>Recordings Inc. v. MySpace</u>, Inc., 526 F. Supp. 2d 1046, 1058

12  (C.D. Cal. 2007) (citations omitted).  In accordance with the

13  local rules, it is appropriate to examine the applicable

14  standards of professional conduct required of members of the

15  State Bar of California.  Rule 3-310 of the California Rules of

16  Professional Conduct provides in pertinent part:

17       (C)  A member shall not, without the informed written
              consent of each client;
18
19           (1)  Accept representation of more than one client in a
                  matter in which the interests of the clients
20                potentially conflict; or

21           (2)  accept or continue representation of more than one
                  client in a matter in which the interests of the
22                clients actually conflict; or

23           (3)  Represent a client in a matter and at the same
                  time in a separate matter accept as a client a
24                person or entity whose interest in the first
                  matter is adverse to the client in the first
25                matter.

26       Deane incorrectly asserts, at times, that Barth represents

27  both Natomas and Solorio in this action.  While Barth accepted

28  service for both parties in this action, ultimately, Solorio

                                  12

answered Deane's third-party claim in *pro per* and Barth filed an answer and counterclaim on behalf of only Natomas.  However, Barth does represent Solorio in the related State Court Action.[7] Thus, Deane has appropriately raised the issue of an actual conflict of interest arising due to Deane's assertion of derivative claims in this action.    oblige

Deane's counter- and third-party claim named both Natomas and Solorio as defendants, but Natomas is also a real *plaintiff-in-interest* because Deane is bringing the shareholder derivative claims against Solorio on Natomas' behalf.  In a derivative suit, a minority shareholder in a corporation can bring claims on behalf of the corporation.  Typically, the action is an extraordinary measure brought against corporate officers and directors who refuse to acknowledge any breach of fiduciary duty or mismanagement of funds, often because of their own involvement in the wrongdoing.  Due to the circumstances, Natomas is also a defendant in this action.  "It is only a 'nominal defendant,' however, because any relief that the plaintiff obtains from the defendant officers and directors accrues to the benefit of the corporation, making it the real party in interest.  Thus, it has been said, the corporation in a derivative action 'is in the anomalous position of being both a plaintiff and a defendant.'"  <u>Baytree Capital Associates, LLC v. Quan</u>, Case No. 08-2822 CAS, 2008 U.S. Dist. LEXIS 87872, *20-21 (C.D. Cal. Aug. 18, 2008) (citations omitted).

---

[7]    The fact that the State Court Action is currently stayed is of no avail because Barth simultaneously represents the interests of Solorio and Natomas in matters involving the same corporate actors and many of the same substantive issues.

1   When an attorney simultaneously represents two seemingly

2   adverse parties, the court must question whether the attorney can

3   ever impartially preserve its duty of loyalty to both parties

4   simultaneously.  Flatt v. Superior Court, 9 Cal. 4th 275, 284

5   (1994).  There are a few rare instances when simultaneous

6   representation is permissible, despite an actual conflict of

7   interest, but generally "the rule of disqualification in

8   simultaneous representation cases [involving actual conflicts of

9   interest] is a per se or 'automatic' one."  Id. (citing Cinema 5,

10  Ltd. v. Cinerama Inc., 528 F.2d 1387 (2d Cir. 1976)).

11  In the specific context of shareholder derivative actions,

12  courts have consistently recognized that the "law clearly forbids

13  dual representation of a corporation and directors in a

14  shareholder derivative suit, at least where, as here, the

15  directors are alleged to have committed fraud."  Forrest v.

16  Baeza, 58 Cal. App. 4th 65, 74 (1997); see also Gong v. RFG Oil,

17  Inc., 166 Cal. App. 4th 209, 215 (2008) (holding that in a

18  derivative suit, the organization named as a defendant is

19  actually a plaintiff and case law forbids dual representation in

20  a derivative suit alleging fraud by the principals because the

21  principals and the organization have adverse, conflicting

22  interests); In re Oracle, 829 F. Supp. at 1188 (disqualification

23  warranted where "the same counsel represents both the corporation

24  and the director and officer defendants, [and thus] the interests

25  of the corporation are likely to receive insufficient

26  protection"); Bell Atlantic Corp. v. Bolger, 2 F.3d 1304, 1317

27  (3d Cir. 1993)(recognizing that "except in patently frivolous

28  cases -- allegations of directors' fraud, intentional misconduct,

14

1  or self-dealing require separate counsel" for the corporation and

2  its directors); <u>Lewis</u>, 218 F. Supp. at 239 (holding that "the

3  interests of the officer, director and majority stockholder

4  defendants in this action are clearly adverse, on the face of the

5  complaint, to the interest of the stockholders," thus mandating

6  disqualification of counsel); <u>Messing v. FDI, Inc.</u> 439 F. Supp.

7  776, 782 (D. N.J. 1977) (finding that "because in the instant

8  case the directors have been accused of fraud and the corporation

9  has elected to take an active stance in the litigation, it is

10 enough for now to decide that, under these combined

11 circumstances, the corporation must retain independent counsel").

12     In each of these cases, the courts recognized the

13 difficulties created by dual representation in a shareholder

14 derivative suit, including the inability to ensure an attorney's

15 duty of loyalty to his client, preventing conflicts of interest

16 which could prejudice a client, and maintaining client

17 confidentiality.  In general, the courts emphasized that to

18 permit such dual representation would *unfairly* prejudice the

19 shareholder bringing the derivative action on behalf of the

20 corporation.  <u>Id.</u>

21     For example, in <u>Forrest</u>, the court found an actual conflict

22 of interest existed where an attorney simultaneously represented

23 two closely held family-run corporations as well as two of the

24 three shareholders of those corporations in a derivative action.

25 The court noted that the paramount concern in a dual

26 representation scenario is "the preservation of public trust in

27 the scrupulous administration of justice and the integrity of the

28 bar."  58 Cal. App. 4th at 73.  Ultimately, the court found that

the interests of the corporations and the individual defendants were adverse, in light of the derivative claims, and held that the integrity of the justice system was best served by allowing the attorney to represent the individual defendants and requiring independent counsel for the corporation. Id. at 82.

Barth's reliance on cases involving merely *potential* conflicts of interest are unavailing. For example, Barth relies primarily on Klemm v. Superior Court, 75 Cal. App. 3d 893, 898 (1977), a case which involved joint representation of a husband and wife in a child custody matter. In Klemm, it was undisputed that no actual conflict of interest presently existed between the husband and wife. Rather, the court held that only a potential conflict existed since at the present time the husband and wife had settled their disputes by agreement. Id. The court, however, acknowledged that if the wife later sought support outside the terms of the agreement, the attorney would be disqualified from representing either party. Id. at 900 (holding that "common sense dictates that it would be unthinkable to permit an attorney to assume a position at a trial or hearing where he could not advocate the interests of one client without adversely injuring those of the other."

To the contrary here, due to Deane's assertion of derivative claims on behalf of Natomas against Solorio, there is necessarily a conflict between the corporation (Natomas) and the alleged wrongful actor (Solorio). The central allegation in Deane's counter- and third-party claim is that Solorio breached his fiduciary duty to Natomas and its shareholders by obstructing the sales of real property, defaming Natomas' stockholders, and

16

generally abusing his position as majority shareholder.
(Counter- Third-Party Claim at ¶ 43.)  Thus, this case is wholly
distinguishable from <u>Klemm</u> because nothing has been settled
between the parties and there remains contentious litigation
regarding improprieties and unethical business practices claimed
by both sides which affect Natomas.  As the above cases
recognize, under these circumstances, it is impossible for Barth
to represent Solorio in the State Court Action and simultaneously
maintain an unbiased posture on behalf of Natomas' interests in
this action because Natomas' interests in the shareholder
derivative action are adverse and actually conflicting with
Solorio.  Because Deane alleges wrongdoing against Solorio on
behalf of Natomas, the two parties are diametrically opposed.[8]
Therefore, the court rejects the notion that the conflict of
interest is merely hypothetical or potential and concludes that
disqualification is required based on the allegations of Deane's
counter- and third-party claim which creates an actual conflict
of interest between Natomas and Solorio.

### III. **Complete Disqualification**

If the court concludes, as it has, that an actual conflict
of interest has been created by Deane's assertion of derivative
claims on behalf of Natomas against Solorio, Barth requests
permission to "cure" the conflict by withdrawing as Solorio's

---

[8]   For this reason, Barth's reliance on <u>Federal Home Loan
Mortgage Corp. v. La Conchita Ranch Co.</u>, 68 Cal. App. 4th 856
(1998) is also unavailing since it too involved only an
undisputed *potential* conflict of interest.  Likewise, Barth's
citation to a State Bar of California opinion is unpersuasive;
that opinion did not involve a shareholder derivative action
where, like in the above cases, the dual representation of the
corporation and the shareholder defendant is unavoidably adverse.

counsel in the State Court Action.   Deane objects, arguing that Barth should be disqualified from representing both Natomas and Solorio because to permit otherwise would "reward" Barth for its unethical conduct.   Neither party's argument is supported by the case law.

Barth's suggestion that the conflict at issue could be "cured" by its withdrawal as the individual shareholder's counsel has been rejected by the courts:

> While this procedure removes the outward appearances of dual representation, the substance of the wrong remains.  A residual bias in favor of the individual defendan[t] might continue to undermine counsel's judgment.  This potential bias would stem from the fact that counsel's first loyalty might remain with the directors and officers of the corporation, who have been his principal contact with the inanimate corporate client in the past.  In addition, counsel might fear that rendering advice antagonistic to the insiders' interest would impair future relations with his corporate client.  For these reasons...[having] the corporation secure new counsel seems the sounder alternative.

Baytree Capital, 2008 U.S. Dist. LEXIS 87872 at *28-29 (*quoting* Comment, Independent Representation for Corporate Defendants in Derivative Suits, 74 Yale L.J. 524, 533-534 (1965)).   Baytree Capital involved a request to recuse an attorney who represented the corporation in the derivative suit and had previously represented the individual corporate defendants in related matters.   The court concluded that it would be inappropriate to allow a firm to continue representing a corporation with ties to the individual defendants because of the high likelihood of bias and inadequate representation.   Id.   Thus, Barth cannot cure the conflict at issue simply by withdrawing as Solorio's counsel.

1     However, Deane's assertion that Barth must be disqualified

2 from representing both Natomas and Solorio is not required, nor

3 necessary.  Deane contends that strong public policy concerns

4 dictate that Barth be disqualified because allowing him to remain

5 as counsel for either party would permit it to profit from

6 unethical conduct, in representing adverse interests.  Deane's

7 concern lacks foundation and support.  If Barth is disqualified

8 from representing Natomas, the adverse interests will still be

9 present between Natomas and Solorio, but Barth will no longer be

10 representing adverse parties.  More importantly, Barth will no

11 longer be assisting Natomas in bringing a derivative claim

12 against a client he has an interest in protecting.  Further,

13 because any distinction between Natomas and its major

14 shareholders is fictional, it would not be improper for Barth to

15 represent Solorio in either action.  <u>Gong v. RFG Oil, Inc.</u>, 166

16 Cal. App. 4th 209, 217 (2008) (citing <u>Forrest</u>, 58 Cal. App. 4th

17 at 76).

18     Indeed, permitting Barth to continue representing Solorio is

19 "consistent with federal authority in the precise circumstance of

20 attorney disqualification in shareholder derivative litigation,

21 which holds that while dual representation of a corporation and

22 its directors is impermissible (at least if the directors are

23 charged with fraud), the attorney who formerly represented both

24 clients may continue to represent the individual ones." <u>Forrest</u>,

25 58 Cal. App. 4th at 81 (<i>citing</i> <u>Musheno v. Gensemer</u>, 897 F. Supp.

26 at 838); <u>Lewis</u>, 218 F. Supp. at 239.  Based on these authorities,

27 the court finds that while Barth's disqualification from

28 representing Natomas is mandated, Barth can continue to represent

1   Solorio in the State Court Action or in this action, if Solorio

2   wishes to have Barth substitute in as his counsel in this matter.

3          **IV.  <u>Future Representation of Natomas</u>**

4          Having determined that Barth must be disqualified from

5   representing Natomas in this action, lastly, the court considers

6   who may represent Natomas in the future.  Pursuant to the Local

7   Rules of this court, Natomas, as a limited liability company,

8   cannot appear in this action *pro per*; it must be represented by

9   counsel.  E.D. Cal. L.R. 83-183.  Thus, the court will stay all

10  proceedings in this case for 60 days to permit Natomas to find

11  substitute counsel.[9]

12         Case law makes clear that said counsel for the corporation

13  in a derivative action must be "independent counsel" who has had

14  no previous connection with the corporation or its individual

15  directors or shareholders.  <u>In re Oracle Sec. Litig</u>., 829 F.

16  Supp. at 1189; <u>Lewis</u>, 218 F. Supp. at 240 (holding "it would be

17  wise for the corporation to retain independent counsel, who have

18  had no previous connection with the corporation, to advise it as

19  to the position which it should take in [the] controversy");

20  <u>Messing</u>, 439 F. Supp. at 782 (recognizing that only

21  "[i]ndependent counsel for the corporation, unshackled by any

22  ties to the directors, [is] in the unique position of having only

23  the corporation's interest at stake").  Thus, the court directs

24  Natomas to retain independent counsel that has no prior ties to

25  the company or any party to this case.

26

27  ─────────────────

28         [9]   All other pending motions in the case will be continued
    by separate minute order of the court.

1

**CONCLUSION**

2       For the foregoing reasons, the court GRANTS in part and

3   DENIES in part Deane's motion to disqualify Barth from

4   representing Natomas and Solorio.   Barth is hereby disqualified

5   from representing Natomas in this action; however, Barth may

6   continue to represent Solorio in the related State Court Action

7   or may substitute in as Solorio's counsel in this action.

8   Natomas is directed to retain independent counsel having no prior

9   relationship with the company or the individual defendants in

10  this action.   The court stays all proceedings in the case for 60

11  days to permit Natomas to find substitute counsel.

12      IT IS SO ORDERED.

13   DATED: September 14, 2009

14

15                                 _____

16                                 FRANK C. DAMRELL, JR.
                                   UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

21