| | |
|---|---|
| 1 | LAW OFFICES OF S. CHANDLER VISHER |
| | S. Chandler Visher, SBN 52957 |
| 2 | 44 Montgomery Street, Suite 3830 |
| | San Francisco, California 94104 |
| 3 | Telephone: (415) 901-0500 |
| | Facsimile: (415) 901-0504 |
| 4 | Email: chandler@visherlaw.com |
| 5 | Attorneys for Plaintiff |
| | NATOMAS GARDENS INVESTMENT GROUP LLC |
| 6 | |
| 7 | THOMAS W. BARTH, SBN 154075 |
| | BARTH & TOZER LLP |
| 8 | 431 I Street, Suite 201 |
| | Sacramento, California 95814 |
| 9 | Telephone: (916) 440-8600 |
| | Facsimile: (916) 440-9610 |
| 10 | Email: tbarth@bttlawfirm.com |
| 11 | Attorneys for Plaintiff |
| | ORCHARD PARK DEVELOPMENT LLC |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATOMAS GARDENS INVESTMENT GROUP LLC, a California limited liability company, et al., | Case No. 2:08-CV-02308-FCD-KJM |
| Plaintiffs, | **PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT** |
| v. | Date: March 26, 2010 |
| JOHN G. SINADINOS, et al., | Time: 10:00 a.m. |
| | Ctrm: 2 |
| Defendants. | Judge: Honorable Frank C. Damrell, Jr. |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES CITED ................................................................................................ ii

I. INTRODUCTION ..................................................................................................................... 1

II. ARGUMENT ............................................................................................................................ 3

    A.    Procedural Legal Standards ....................................................................................... 3

    B.    Facts Alleged in the Second Amended Complaint .................................................... 4

        1.    General Nature of Additional Allegations ..................................................... 4

        2.    Actions by Sorensen and Stockton ................................................................. 5

    C.    Plaintiffs Have Alleged Adequately Sorensen and Stockton's Awareness and Participation in the RICO Conspiracy ........................................... 9

    D.    Plaintiffs Have Alleged Adequately Claims Based on Conversion ......................... 11

III. CONCLUSION ...................................................................................................................... 13

# TABLE OF AUTHORITIES CITED

| | Page |
|---|---|
| **Cases** | |

*Baxter v. King*, 253 P. 172 (1927) .................................................................................. 12

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1255 (2007) ............... 10

*Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000) ................... 9-10

*Burlesci v. Petersen*, 68 Cal.App.4th 1062 (1989) ..................................................... 11-12

*Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99 (1957) .......................................................... 3

*De La Cruz v. Tormey*, 582 F.2d 45 (9th Cir. 1978) ....................................................... 3

*Doe v. United States Department of Justice*, 753 F.2d 1092 (D.C. Cir. 1985) ............... 3

*Haddock v. Board of Dental Examiners of California*, 777 F.2d 462 (9th Cir. 1985) ... 3

*Haigler v. Donnelly*, 18 Cal.2d 681 (1941) ................................................................... 12

*Hamilton v. Willms*, 2005 WL 3797562 (E.D. Cal. 2005) .............................................. 9

*Jordon v. Talbot*, 55 Cal.2d 597 (1961) ..................................................................... 11-12

*Levine v. Diamanthuset, Inc.*, 950 F.2d 1478 (9th Cir. 1991) ......................................... 3

*Massey v. Banning Unified School District*, 256 F.Supp.2d 1090 (C.D. Cal. 2003) ..... 3

*Mullis v. United States Bankruptcy Court*, 828 F.2d 1385 (9th Cir. 1987) ................... 3

*Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989) ............................................. 3

*Oakdale Village Group v. Fong*, 43 Cal.App.4th 539 (1996) ...................................... 12

*Pareto v. FDIC*, 139 F.3d 696 (9th Cir. 1998) ................................................................ 3

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Weil & Shapiro*,
    150 Cal.App.4th 384 (2007) .................................................................................... 12

*Poggi v. Scott*, 167 Cal. 372 (1914) .............................................................................. 12

*Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469 (1997) ........................................ 10

*United States v. Posada-Rios*, 158 F.3d 832 (5th Cir. 1998) ......................................... 9

*United States v. Redwood City*, 642 F.2d 963 (9th Cir. 1981) ....................................... 3

*Watson v. Stockton Morris Plan Co.*, 34 Cal.App.2d 393 (1939) ................................ 12

*Weiss v. Marcus*, 51 Cal.App.3d 590 (1975) ................................................................ 12

**TABLE OF AUTHORITIES CITED (Continued)**

Page

**Statutes**

Title 18, United States Code § 1962 .................................................................. 1, 9-10

**Rules**

Federal Rules of Civil Procedure, Rule 12(b)(6) ................................................................3

**Other Authorities**

Cal. Practice Guide: Federal Civil Procedure Before Trial, § 9:215 ..............................3

Cal. Practice Guide: Federal Civil Procedure before Trial, § 9:227 ...............................3

# I
# INTRODUCTION

Plaintiffs Natomas Gardens Investment Group LLC (Natomas) and Orchard Park Development LLC (Orchard) oppose the motion to dismiss, or in the alternative for more definite statement, brought by defendants. Defendants Stephen Foondos[1], Glenn Sorensen, Jr. (Sorensen), and Stockton & 65th LP (Stockton) move for dismissal of Count One of the Second Amended Complaint (SAC), alleging violations of Title 18, United States Code Section 1962 (a)-(c), the Racketeering Influenced and Corrupt Organizations (RICO) Act. Defendants Sorensen and Stockton move for dismissal of Count Two, alleging RICO conspiracy, and defendants, except Larry Deane, Stewart Title Company, Baljit Johl, Harinder Johl, and Margarida Leavitt, move to dismiss Counts Nine and Eleven, alleging individual and derivative claims of conversion. In the alternative, defendants move for a more definite statement regarding the claims involving RICO, RICO conspiracy and conversion.

Plaintiffs filed the SAC following the Court's Memorandum and Order of May 12, 2009 (Order of May 12), to address certain deficiencies identified by the Court in plaintiffs' First Amended Complaint.[2] The primary changes in the SAC which are relevant to defendants' current motion concern additional facts relating to the activities of defendants Sorensen and Stockton (SAC, ¶¶72-86) and Count Eleven, stating derivative claims for conversion (SAC, ¶¶257-262). No additional facts have been alleged in the SAC, relating to the activities and involvement of defendant Stephen Foondos.

To clarify the particular defendants alleged to have committed RICO and RICO conspiracy violations, the SAC specifically recites the identities of the defendants against whom those Counts are alleged. See SAC, ¶¶200, 208. Plaintiffs acknowledge that defendants Sorensen, Stockton, and Stephen Foondos were erroneously included among the identified defendants subject to Count One, RICO (SAC, ¶200). Accordingly, plaintiffs request the Court

---

[1] Defendants' notice of motion first refers to Stanley Foondos as a moving party re: RICO charges, but subsequently refers to Stephen Foondos regarding the motion to dismiss Count One of the Second Amended Complaint.
[2] See Request for Judicial Notice (RJN) in Opposition to Defendants' Motions to Dismiss, [Docket No. 211] Exhibit A, a copy of the SAC, with all changes from the First Amended Complaint shown by "tracked changes" markings (new text underlined, strike-through of deleted text).

00004494 - 1 -

allow withdrawal of the claims under Count One with respect to defendants Sorensen, Stockton, and Stephen Foondos, and plaintiffs agree to the dismissal prayed in those particulars. Plaintiffs did not intend to expand the claims under Count One to those defendants, and the RICO conspiracy claims against defendant Stephen Foondos remain the same in the SAC, as were found sufficient by the Court in the First Amended Complaint.

The arguments raised by defendants Sorensen and Stockton against claims under Count Two, alleging RICO conspiracy, are based on a misunderstanding and misstatement of the facts alleged on the face of the SAC. Defendants try to tell a different story for their benefit, ignoring the detailed facts that show Sorenson and Stockton knowingly agreed to facilitate the scheme by John Sinadinos, Stanley Foondos, and the other entity defendants charged with the operation and management of a RICO enterprise. The facts alleged against defendants Sorensen and Stockton in the SAC include additional details, showing that they were aware of the essential nature and scope of the enterprise and intended to participate in it. The particular claims against defendants Sorensen and Stockton are supported by appropriate factual allegations of RICO conspiracy liability.

Defendants' challenge to the conversion claim similarly does not withstand scrutiny. First, plaintiffs have not alleged that defendants converted their "personal property." What is alleged is that plaintiffs were, and are, entitled to possession, ownership, and control of all funds deposited in the project accounts by prospective buyers, investors, and homebuilders to the extent of their membership interests and capital accounts in the development companies for those projects (SAC, ¶251) and, similarly, plaintiffs were and are entitled to possession, ownership, and control of property interests and equity wrongfully transferred by defendants from Village and Vintage Creek projects, including but not limited to the interests in the Johl, Von Behren, and Ubungen parcels. (SAC, ¶251.) Through their conversion, defendants have taken possession, ownership and control of plaintiffs' property and, as a proximate result, plaintiffs suffered injuries and monetary damages in excess of $3,000,000. (SAC, ¶¶7, 252) Plaintiffs have alleged all necessary elements to state a claim based on conversion.

///

# II

# ARGUMENT

## A. Procedural Legal Standards

The purpose of a Rule 12(b)(6) motion is to test the "legal sufficiency of the claim or claims stated in the complaint." *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99 (1957); *De La Cruz v. Tormey*, 582 F.2d 45 (9th Cir. 1978). The motion is disfavored; dismissal is proper only in "extraordinary" cases. *United States v. Redwood City*, 642 F.2d 963, 966 (9th Cir. 1981).

In evaluating the motion, the Court looks only to the face of the complaint to determine whether there are defects. *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir. 1991). In addition, "the court must accept as true all material allegations in the complaint, as well as *reasonable inferences* to be drawn from them." Schwarzer, Tashima, and Wagstaffe, *Cal. Practice Guide: Federal Civil Procedure Before Trial*, § 9:215 (emphasis in original), *citing Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). "The test is whether the facts, as alleged, support *any* valid claims entitling plaintiff to relief" regardless of whether plaintiff erroneously used the wrong legal theory. Schwarzer et al., *Cal. Practice Guide: Federal Civil Procedure before Trial*, § 9:227 (emphasis in original), *citing Haddock v. Board of Dental Examiners of California*, 777 F.2d 462, 464 (9th Cir. 1985). No matter how improbable the facts alleged may be, they must be accepted as true for purposes of the motion. *Neitzke v. Williams*, 490 U.S. 319, 328-329, 109 S.Ct. 1827, 1833 (1989). The Court need not accept as true allegations that contradict facts which may be judicially noticed by the Court. *Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

A Rule 12(b)(6) motion will not be granted merely because plaintiff requests a remedy to which he or she is not entitled. "[I]t need not appear that the plaintiff can obtain the *specific* relief demanded as long as the court can ascertain from the face of the complaint that *some* relief can be granted." *Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1104 (D.C. Cir. 1985) (emphasis in original); *Massey v. Banning Unified School Dist.*, 256 F.Supp.2d 1090, 1092 (C.D. Cal. 2003). Accordingly, a motion to dismiss cannot extend to granting relief for the

///

moving parties on a theory that some particular form of relief stated on the face of the complaint is unavailable.

### B. Facts Alleged in the Second Amended Complaint

#### 1. General Nature of Additional Allegations

The SAC includes additional facts detailing the extensive involvement of Sorensen and Stockton in the fraudulent scheme implemented by defendants Sinadinos, Stanley Foondos, and their related entities. (SAC, ¶¶72-86.) The Court's Order of May 12 determined that plaintiffs' allegations demonstrated that Sorensen and Stockton were "investors of the Village project," who "may have benefitted from defendant Sinadinos' alleged unlawful conduct," without adequate allegations of defendants' participation in or awareness of the essential nature and scope of the unlawful enterprise. See Order of May 12, Docket No. 123, at 40:20-41:14. While the First Amended Complaint generally alleged direct involvement by Sorensen (the owner of Stockton) in the fraudulent scheme (see original text of complaint in SAC attached as Exhibit A to the RJN, at 21:23 and 23:24), it did not contain the details now set forth in the SAC. The additional facts alleged against Sorensen and Stockton answer the questions raised by the Order of May 12[3], and these facts show defendants were actively facilitating the fraudulent scheme.

The Johl-Barnard-Sparks transactions are identified in the SAC as a significant, early stage of the unlawful RICO enterprise operated and managed by defendants Sinadinos, Stanley Foondos, and their related entities. (SAC, ¶¶72, 73.) Those transactions occurred early in the active pursuit of a scheme designed to fraudulently inflate capital investment accounts in Village, as it became clear that the national home builder, KB Homes, had guaranteed more than $8 million in deposits toward the purchase of Village's property rights. (SAC, ¶73.) The Johl-Barnard-Sparks transactions resulted in defendant John Sinadinos using his shell game of loans to convert money belonging to the development projects into purported additional capital, belonging to him and his co-conspirators, in the amount of at least $700,000. (SAC, ¶84.) After the

---

[3] The Order of May 12 identified certain missing facts, as follows: (1) "... plaintiffs do not allege that Sorensen and Stockton made representations that they would option the property back to Village...," (2) "... plaintiffs do not allege acts or conduct engaged in by Sorensen or Stockton to defraud plaintiff Natomas of its purchase rights to the parcels...," and (3) "... plaintiffs do not specifically allege that Sorensen and Stockton were aware of the alleged RICO conspiracy and intended to participate in it." (Order of May 12, Docket No. 123, at 41:1-14)

00004494

- 4 -

Johl-Barnard-Sparks transactions, which were launched by the concerted actions of Sinadinos and Sorensen, both of them obtained unlawful benefits, as explained below. The additional facts alleged in the SAC make it clear that Sorensen and his company, Stockton, were not innocent investors in the Village project, as they would have the Court believe.

### 2. Actions by Sorensen and Stockton

The consistent and continuing pattern of racketeering activities by defendants has the uniform characteristic of resulting in their personal benefit. Defendants Sinadinos, Stanley Foondos, and their multiple alter ego companies conducted their racketeering activities for their specific financial benefit, whether by direct receipt of money not belonging to them, or the use of company assets which they had not contributed to Village Capital Group LLC (Village) or Vintage Creek LLC (Vintage), for the purpose of fraudulently increasing their stated capital accounts in the companies. Accordingly, the overwhelming pattern of defendants' racketeering activity alleged by the SAC results in direct unlawful financial benefits to defendants and corresponding, direct financial losses suffered by plaintiffs. As minority members of the development companies, plaintiffs are suing, inter alia, for recovery of the direct losses caused by defendants, estimated to be at least $3 million. (SAC, ¶¶7, 204, 211.)

The actions by defendant Sorensen (for himself and his company, Stockton) directly facilitated the scheme of the unlawful enterprise and also resulted in unlawful benefits for them. Sorensen met with Eric Solorio, the manager of Natomas, more than eight times during the months of July through October 2004, with defendant Sinadinos present in Sinadinos law office. (SAC, ¶74.) In the first meeting, Sorensen and Sinadinos explained to Mr. Solorio that they often worked together to "park" proceeds of Section 1031 exchanges by Sorensen, and they were proposing to do the same with the Village project. Ibid. Solorio had previously executed a binding agreement on behalf of Natomas with Baljit Johl, to sell the Johl property to Natomas under a three-year option. Ibid. As part of the effort to convince Solorio to agree to the proposed investment by Sorensen, Sinadinos and Sorensen restructured the purchase agreement between Natomas and Johl, to require Johl to reinvest funds paid by or on behalf of Natomas into other properties in the Village project. (SAC, ¶75.) The obvious purpose for that provision was to

keep the financial resources available to the Village project within that project, without co-mingling assets with the Vintage Creek LLC project, or any other company. Ibid.

In that first meeting, Solorio adamantly objected to the proposal by Sorensen and Sinadinos for several reasons. Sinadinos and Sorenson proposed an extremely high rate of 25% annual return on the investment, which was significantly higher than the customary rate of 6% to 8%, that Sinadinos had previously discussed with Solorio. (SAC, ¶76.) Also, there was no need in 2004 to commit substantial funding to the purchase of the Johl parcel, and Mr. Solorio objected to the proposed structure of the investment. Ibid.

Despite Mr. Solorio's objections, Sinadinos and Sorensen actively and repeatedly made assurances that the proposed transaction would be accomplished without any detriment to Natomas. (SAC, ¶77.) Sinadinos and Sorensen promised that Sorensen and his company, Stockton, would immediately execute a written option back to Village, with the right to repurchase the properties Stockton was acquiring in the Village project, for the same terms contained in the original Johl-Natomas purchase agreement. Ibid. Also, Sinadinos promised Mr. Solorio that he would be responsible to pay Sorensen the annual return of 25%, rather than placing that burden on the project, and derivatively Natomas. Ibid. Relying on these promises, and the restructured Johl-Natomas purchase agreement, requiring reinvestment of Johl's sales proceeds back into Village, Mr. Solorio agreed to the proposed transaction. (SAC, ¶79.)

Immediately after obtaining Solorio's agreement on behalf of Natomas, Sinadinos and Sorensen executed their original plan, which they had misrepresented to Solorio. (SAC, ¶80.) Sinadinos and Sorensen completed a purchase by Sorensen of the Johl parcel in November 2004, for approximately $2.3 million. Ibid. Rather than direct the reinvestment of approximately $1.3 million received by Johl into other Village properties, as they had originally promised and as required by the restructured Johl-Natomas purchase agreement, Sinadinos and Sorensen instead directed Johl to purchase the Barnard parcel in the Vintage project. Ibid. Only part of the $1.3 million was used to purchase the Barnard parcel, and Sinadinos immediately took possession of Vintage Creek's net profit from the Barnard-Johl sale in early January 2005, in the approximate amount of $837,287. (SAC, ¶82.) Then, Sinadinos wire-transferred approximately $700,000 of

the profit from the Barnard-Johl sale to an escrow for the purchase of substantial equity ownership in the Sparks parcel, which is in the Village project. (SAC, ¶83.) Ultimately, Sinadinos, Stanley Foondos, and their co-conspirators claimed the approximate $700,000 used to purchase the Sparks parcel as a capital investment held by one of their entities, Chi-Sac Village Capital Group Investors LLC. (SAC, ¶84.) In other words, the purported "loan" by Sinadinos of $700,000 from Vintage to Village was thereafter treated by Sinadinos as part of his and his co-conspirators' ownership interest in Village, without Village owing the money back to the Vintage project. By poorly documenting the original "loan" and subsequently preparing false tax returns, Sinadinos and his co-conspirators effectively laundered a substantial sum of money originating from the "investment" by Sorensen and Stockton, by a shell game, moving proceeds between several escrows in the Village and Vintage projects. Ibid.

The net effect of these money-laundering transactions was a fraudulent purported increase of personal ownership interests in the Village project by Sinadinos and his co-conspirators, with the tax returns showing no debt owed to the Vintage project, the source of those proceeds. The Vintage project was left with an uncollectible debt of approximately $700,000, which is ultimately a very substantial loss to the project and Natomas, holding a 45% membership interest in Vintage. This particular series of transactions, designated the Johl-Barnard-Sparks transactions in the SAC, was an early occurrence of the multiple transactions comprising the fraudulent RICO enterprise, with the consistent result of transferring several million dollars from the Vintage project to the Village project, without any intention by defendants to repay Vintage.

It was no coincidence that the Johl-Barnard-Sparks transactions occurred at the same time KB Homes deposited the first amount of $2,243,575 into escrow for the Village project on November 9, 2004. (SAC, ¶72.) The intent of Sinadinos and his co-conspirators, among other things, was to inflate their alleged ownership interest, on which they might enjoy a favorable return, in the project which was already being guaranteed a substantial investment by KB Homes. (SAC, ¶73.)

///

The actions by Sorensen and Stockton directly facilitated the early execution of the fraudulent enterprise by Sinadinos and his co-conspirators. If Sorensen had complied with his promise to direct the reinvestment of the Johl sales proceeds back into the Village project, it would not have been possible to complete the series of money-laundering transactions, moving the funds back and forth between Vintage and Village. Defendants try to misconstrue the facts in their motion to dismiss, by arguing that "common sense" does not allow the allegation that Sorensen had the ability or authority to direct the reinvestment of Johl sales proceeds. See Defendants' Memorandum of Points and Authorities at 9:11-21. That argument ignores the fact that an assignment by Natomas of the restructured Johl-Natomas agreement to Stockton resulted in Sorensen and Stockton possessing the contractual right to direct the reinvestment of the money back into the Village project.

Further, if Sorensen and Stockton had complied with the promise to immediately grant the written option back to Village for repurchase of the Johl property on the same terms of the Johl-Natomas agreement, then Natomas would not be subject to the loss reflected by the attempt of Sinadinos and his co-conspirators to define the amount owed to Sorensen and Stockton as $6 million. (See SAC, ¶86.) Instead, Sorensen, Stockton, and Sinadinos have continuously refused and still fail and refuse to document the option rights of Village in the property now held by Sorensen and Stockton. (SAC, ¶86.) The net effect of those actions by Sorensen, Stockton, and Sinadinos, has been their ability to define the ultimate payment to Sorensen and Stockton out of the Village project by whatever favorable terms they might ultimately impose on the project. Again, defendants try to tell a different story in their motion to dismiss, fabricating their own spin that "Sorensen's alleged wrongful retention of the option rights that were allegedly owed to Village would have actually served to damage the goals of the alleged enterprise..." (See Defendants' Memorandum of Points and Authorities at 6:20-23.) Contrary to that fabrication, the actual facts alleged by the SAC show that Sorensen and Stockton stand to gain an undefined and undeserved profit by acting in concert with Sinadinos and his other co-conspirators. Quite clearly, in exchange for Sorensen and Stockton directly facilitating the money laundering transactions by Sinadinos, Sinadinos has assisted Sorensen and Stockton in resisting the repeated

attempts by Mr. Solorio on behalf of Natomas, to obtain the originally-promised written option agreement in favor of the Village project. The SAC alleges detailed facts of concerted action by Sorensen, Stockton, and Sinadinos, and by allowing Sorensen and Stockton to avoid executing a written option agreement back to Village, Sinadinos has granted Sorensen and Stockton favorable conditions as his co-conspirators. Frankly, by not enforcing the fraudulent promise of Sorensen and Stockton to execute an option agreement in favor of Village, Sinadinos is very likely assisting his co-conspirators with the avoidance of the adverse tax consequences for an illegal IRS Section 1031 exchange transaction, concerning the original payment by Sorensen and Stockton totaling approximately $3 million. These potentially fraudulent tax transactions can only be exposed by the conduct of discovery in this case.

As alleged on the face of the SAC, by the active participation of Sorensen and Stockton in the multiple promises and assurances to obtain the assignment of Natomas purchase rights in the Johl property, and the subsequent, direct participation by Sorensen in the execution of the fraudulent scheme with Sinadinos, Sorensen and Stockton were aware of the fraudulent RICO enterprise and intended to participate in it. (SAC, ¶81.)

### C. Plaintiffs Have Alleged Adequately Sorensen and Stockton's Awareness and Participation in the RICO Conspiracy

The claims stated by plaintiffs against Sorensen and Stockton are based on RICO conspiracy liability under Title 18, United States Code Section 1962(d).[4] To be guilty of conspiring to commit a substantive RICO offense under Section 1962(d), one must knowingly agree to facilitate the activities of those who are operating the enterprise in an illegal manner. See *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000); *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998) (two or more people must agree to commit substantive RICO offense and defendant must know of and agree to overall objective of RICO offense); see also *Hamilton v. Willms*, 2005 WL 3797562 (E.D. Cal. 2005). It is an agreement, not to operate or manage the enterprise, but to facilitate the activities of those who do. *Brouwer*,

---

[4] As previously explained, defendants Sorensen and Stockton were erroneously included in Court One. As plaintiffs agree to their dismissal from Count One, plaintiffs' opposition to defendants' motion to dismiss focuses on Count Two, RICO Conspiracy and Counts Nine and Eleven based on conversion.

00004494 - 9 -

JOINT OPPOSITION TO DEFENDANTS' MOTION TO DISMISS [CASE NUMBER 2:08-CV-02308-FCD-KJM]

*supra*, 199 F.3d at 967. The Supreme Court identified the test in a unanimous decision, which held that a sheriff's deputy could be convicted of conspiracy under Section 1962(d) for his role in a scheme that violated the federal bribery statute even though he neither committed nor agreed to commit the predicate acts that are required for a substantive violation of Section 1962(c). *Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469 (1997). The *Salinas* court held that the "evidence showed that [the sheriff] committed at least two acts of racketeering activity when he accepted numerous bribes and that [the deputy] *knew about and agreed to facilitate the scheme*. This is sufficient to support a conviction under Section 1962(d)." *Salinas*, 522 U.S. at 66, 118 S.Ct. at 477.

The facts alleged in the SAC, and reasonable inferences drawn from those facts, must state a claim "that is plausible on its face," that defendants knew about and agreed to facilitate the activities of defendants Sinadinos and Foondos. Cf. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1255, 1965-1966 (2007) (pleading standard for unlawful conspiracy in restraint of trade).

As previously recited, the allegations against Sorensen and Stockton meet this test. Sorensen and his company were intimately involved in the Johl-Barnard-Sparks transactions, even to the point of directing the transfer of Section 1031 exchange funds from Village to Vintage, in violation of the agreements he and Sinadinos made with Mr. Solorio. Sorensen and his company not only facilitated the activities of Sinadinos, but he directly assisted in those activities and engaged in numerous misrepresentations made to Solorio for the direct purpose of extracting his consent to Sorensen and Stockton's investment. After securing Solorio's consent through deceit and misrepresentation, Sorensen and Sinadinos executed their original plan shutting Natomas out of the transaction to its financial detriment. The circumstances of the unusually favorable terms obtained by Sorensen (a partner with Sinadinos in other ventures) and his company, his direct participation in completion of the fraudulent scheme, and his outright failure to perform the obligation of granting an option back to the Village project support the reasonable inferences that he knowingly agreed to facilitate the activities of Sinadinos. Plaintiffs
///

have met their duty to allege adequately their claim of RICO conspiracy as to defendants Sorensen and Stockton.

### D. Plaintiffs Have Alleged Adequately Claims Based on Conversion

The tort of conversion is the wrongful exercise of dominion over the personal property of another. The elements of a conversion claim are well-known and include: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. (*Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066 (1989).) Plaintiffs have pleaded in exquisite factual detail the extent of defendant Sinadinos' and his co-conspirators' RICO enterprise that existed to and was fueled by defendants' misappropriation of funds belonging to plaintiffs. (See, SAC, ¶¶63-151) These allegations, incorporated by reference, similarly support plaintiffs' conversion claim as plaintiffs allegedly were, and are, entitled to possession, ownership, and control of all funds deposited in the accounts for the Village, Vintage Creek, and Madera projects by prospective buyers, investors, and homebuilders to the extent of their membership interests and capital accounts in the development companies for those projects (SAC, ¶251) and they were and are entitled to possession, ownership, and control of property interests and equity wrongfully transferred by defendants from Village and Vintage Creek projects, including but not limited to the interests in the Johl, Von Behren, and Ubungen parcels. (SAC, ¶251.) Through their conversion, defendants have taken possession, ownership and control of plaintiffs' property and, as a proximate result, plaintiffs suffered injuries and monetary damages in excess of $3,000,000. (SAC, ¶¶7, 252)[5] Plaintiffs have alleged all necessary elements to state a claim based on conversion.

Like defendant Deane, defendants herein argue that plaintiffs are required to prove their conversion claim through their allegations. Defendants' cited authority, however, does not provide legal support for the proposition. In *Jordon v. Talbot*, 55 Cal. 2d 597, 609 (1961), upon which defendants rely, the court held in a post-trial appeal that defendant landlord's storage of plaintiff tenant's possessions in a warehouse in plaintiff's name where defendant did not use any

---

[5] Plaintiffs do not allege that defendants converted their "real property." But, they do allege that defendants have converted their monetary interests in the Village, Vintage Creek and Madera projects (SAC, ¶251).

00004494 - 11 -

of the possessions or make any ownership claim to them did not constitute conversion. For obvious reasons, the *Jordon* opinion does not provide any guidance on the adequacy of pleading allegations supporting a conversion claim.

Nor is there a requirement that plaintiffs prove "that an actor intentionally and substantially interfered with a plaintiff's right of possession of personal property." (Defendants' Memorandum of Points and Authorities at 10:19-23). Rather, conversion is a strict liability tort. "The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial. [Citations.]" (*Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066 (1989).) "Neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action [for conversion]." (*Poggi v. Scott*, 167 Cal. 372, 375 (1914). Moreover, it is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use. (*Oakdale Village Group v. Fong*, 43 Cal.App.4th 539, 544 (1996).)

Citing *Baxter v. King*, 253 P. 172 (1927), defendants further argue (with some internal inconsistencies) that plaintiffs fail to "identify specifically" what money they have any right to possess. (Defendants' Memorandum of Points and Authorities at 11:10-16. More current law suggests that the amount in question need only be "ascertainable." California cases permitting an action for conversion of money typically involve those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others. (See, e.g., *Weiss v. Marcus*, 51 Cal.App.3d 590, 599 (1975); *Haigler v. Donnelly*, 18 Cal.2d at 681 (1941); *Watson v. Stockton Morris Plan Co.*, 34 Cal.App.2d 393, 403 (1939).) In each of these cases, the amount of money converted was readily ascertainable. In *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Weil & Shapiro*, 150 Cal.App.4th 384, 397 (2007), a case upon which defendants also rely, the court recognized that plaintiff could state a cause of action for conversion by alleging, in effect, an amount of cash "capable of identification." In this case, the amount converted will be readily ascertainable once plaintiffs have been allowed complete access to partnership records (to which

they have previously been denied) and have had the opportunity to engage in discovery to prove the extent of defendants' conversion. If, after discovery has been completed, and plaintiffs are unable to prove a sum certain of defendants' conversion then defendants are free to challenge the claim with a motion for summary adjudication. Plaintiffs have alleged adequately their claim based on conversion. To hold plaintiffs to a pleading and proof standard applied at the summary judgment stage is premature and not sanctioned by law.

## III

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request an order by the Court denying defendants' motion to dismiss, or in the alternative, for more definite statement. Plaintiffs have adequately alleged the RICO conspiracy claim against defendants Sorensen and Stockton and the Court has already determined that plaintiffs have properly alleged a RICO conspiracy claim as against defendant Stephen Foondos. The allegations of the Second Amended Complaint are sufficiently detailed to inform defendants Sorensen and Stockton of the claims asserted against them allowing them the ability to file a responsive pleading. So too, the Second Amended Complaint adequately alleges plaintiffs' conversion claim as to all defendants. Plaintiffs respectfully request that defendants' Motion to Dismiss or, in the alternative, Motion for a More Definite Statement be DENIED in its entirety.

Respectfully submitted,

Dated: March 11, 2010.   LAW OFFICES OF S. CHANDLER VISHER


By /s/ S. Chandler Visher
S. CHANDLER VISHER
Attorneys for Plaintiff
NATOMAS GARDENS INVESTMENT GROUP LLC

Dated: March 11, 2010.   BARTH TOZER & TIMM LLP


By /s/ Thomas W. Barth
THOMAS W. BARTH
Attorneys for Plaintiff
ORCHARD PARK DEVELOPMENT LLC

# PROOF OF SERVICE

I, Vanessa Powers, declare: I am a resident of the State of California, over the age of 18 years, and not a party to the within action; my business address is 44 Montgomery Street, Suite 3830, San Francisco, California 94104. On March 12, 2010, I served the within document:

**PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

☑ by causing personal delivery of the document listed above to the persons at the addresses set forth below.

| | |
|---|---|
| Donald M. Wanland, Jr. (don@lowands.com)<br>Jason W. Burgess (jburgess@lowands.com)<br>Law Offices of Wanland & Spaulding<br>705 University Avenue<br>Sacramento, CA 95825<br>916-568-6000; Fax 916-568-6009 | Carl P. Blaine (cblaine@wkblaw.com)<br>Eric Garner (egarner@wkblaw.com)<br>Wagner Kirkman Blaine Klomparens & Youmans<br>10640 Mather Boulevard, Suite 200<br>Mather, CA 95655<br>916-920-5286; Fax 916-920-8608 |
| Robert D. Collins (BCollins@CVMLaw.com)<br>CVM Law Group, LLP<br>8795 Folsom Blvd., Suite 200<br>Sacramento, CA 95826<br>916-381-6171; Fax 916-381-1109 | Stephen J. Beede (sjbeede@bpelaw.com)<br>BPE Law Group, INC.<br>11140 Fair Oaks Blvd., Suite 300<br>Fair Oaks, CA 95628<br>916-966-2260; Fax: 916-966-2268 |
| Patrick J. Waltz (Waltzlaw@sbcglobal.net)<br>Waltz Law Firm<br>2022 28th Street<br>Sacramento, CA 95818<br>916-454-0904; Fax: 916-454-0909 | Matthew G. Jacobs (mgj@sojllp.com)<br>Craig C. Allison (cca@sojllp.com)<br>Stevens, O'Connell & Jacobs LLP<br>400 Capitol Mall, Suite 1400<br>Sacramento, CA 95814<br>916-329-9111; Fax: 916-329-9110 |
| John D. Fairbrook (jfairbrook@trainorfairbrook.com)<br>Trainor Fairbrook<br>980 Fulton Avenue<br>Sacramento, CA 95825<br>916-929-7000; Fax: 916-929-7111 | Eric Solorio (In Pro Per)<br>34 Sage Grouse Court<br>Sacramento, CA 95834 |
| Thomas W. Barth (tbarth@bttlawfirm.com)<br>Barth & Tozer LLP<br>431 I Street, Suite 201<br>Sacramento, CA 95814<br>916-440-8600; Fax: 916-440-9610 | |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that this was executed on March 12, 2010, at Sacramento, California.

/s/ Vanessa Powers
VANESSA POWERS

00004494