```
 1
 2
 3
 4
 5
 6
 7
 8
 9                    UNITED STATES DISTRICT COURT
10                   EASTERN DISTRICT OF CALIFORNIA
11                          ----oo0oo----
12
13  NATOMAS GARDENS INVESTMENT
    GROUP, LLC, a California
14  limited liability company,
    ORCHARD PARK DEVELOPMENT, LLC,
15  a California limited liability
    company,
16                                   NO. CIV. S-08-2308 FCD/KJM
              Plaintiffs,
17
         v.                          MEMORANDUM AND ORDER
18
    JOHN G. SINADINOS, STANLEY J.
19  FOONDOS, STEPHEN FOONDOS, et
    al.,
20
              Defendants.
21
                            ----oo0oo----
22
23       This matter is before the court on defendant Larry Deane's

24  ("Deane") motions to dismiss and specially strike plaintiff

25  Natomas Gardens Investment Group, LLC's ("Natomas") counterclaim

26  or, alternatively, for a more definite statement.  (Docket

27
28
```

#s 170, 183.) Natomas opposes the motions.[1] For the reasons set for forth below, Deane's motions are DENIED.

## BACKGROUND

Natomas is a limited liability company operating in California. (Pl.'s Counterclaim ["Pl.'s CC"], filed July 28, 2009 [Docket #153], ¶ 2.) Natomas' membership includes, among others, Deane and Eric Solorio ("Solorio"), who is the manager of the company pursuant to the company's Operating Agreement. (Pl.'s CC ¶¶ 6, 9.) Natomas acquired purchase rights to several parcels of land. In order to purchase these properties, Natomas exchanged its purchase rights for a 45 percent stake in several development companies operated by the various defendants in this action.

Plaintiffs initially filed this action on September 29, 2008, alleging claims for RICO violations, RICO conspiracy, fraud, breach of fiduciary duty, legal and accounting malpractice, and conversion. (Pl.s' Second Amended Complaint ["SAC"], ¶¶ 192-251.) None of the claims arose from Natomas' Operating Agreement. Instead, Natomas, together with plaintiff, Orchard Park Development, LLC, alleged that the various defendants engaged in a complex scheme to defraud them through a sequence of property transfers, commingling of assets, and loans which were never intended to be repaid. (Id. ¶ 2-3.) Plaintiffs allege that through these actions, defendants operated a racketeering enterprise which "resulted in losses of plaintiffs' entire business opportunities, goodwill, prospective business

---

[1] Because oral argument will not be of material assistance, the court orders these matters submitted on the briefs. E.D. Cal. L.R. 230(g).

opportunities, and monetary assets exceeding $3,000,000." (Id. ¶ 7.)

On October 20, 2008, Deane filed a lawsuit in California state court seeking dissolution of Natomas. (Deane's RJN re: MTD Pl.s' SAC, Ex. 1.) In that action, on January 27, 2009, Natomas filed a first amended cross-complaint against Deane which alleged claims for breach of contract, express and implied indemnity, comparative indemnity, and breach of fiduciary duty. (Deane's RJN re: MTD Pl.'s Counterclaim Ex. A.) These claims were expressly based on Natomas' Operating Agreement. On May 12, 2009, this court entered an order granting in part and denying in part various defendants', including Deane's, motions to dismiss plaintiffs' first amended complaint. (Docket # 123.)

On June 1, 2009, Deane filed a counter- and third-party claim against Natomas and Solorio, alleging individual claims for express indemnity, breach of contract, implied indemnity, and equitable indemnity, and derivative claims for breach of fiduciary duty, breach of contract and interference with prospective economic advantage. (Docket # 125.) These claims, like the claims proceeding before the state court, arose from Natomas' Operating Agreement.

On July 28, 2009, Natomas filed its answer to Deane's counterclaim which included its own counterclaim against Deane for breach of contract and breach of fiduciary duties; these claims were also partially the subject of Natomas' cross-complaint filed in state court. (Docket # 153.) It is this counterclaim filed by Natomas which is the subject of the present motions.

Meanwhile, on August 3, 2009, the state court stayed the state action pending the outcome of this federal lawsuit. (Pls.' RJN in Opp'n to Deane's MTD [Docket No. 211], Ex. C.)

On August 17, 2009, Deane filed the instant motion to dismiss Natomas' counterclaim on the grounds that it violated the pre-trial scheduling order as an amendment to plaintiffs' complaint without leave of court, and that it should be dismissed pursuant to the "Colorado River doctrine." (Docket # 170.) On September 25, 2009, Deane filed a separate motion to dismiss Natomas' counterclaim labeled as a motion to "specially strike" pursuant to California's anti-SLAPP statute.[2]

**ANALYSIS**

Deane moves to dismiss Natomas' counterclaim on three distinct grounds. In Deane's motion to dismiss, he argues (1) Natomas' counterclaim is, in essence, an amendment to plaintiffs' complaint, and therefore is a violation of this court's pre-trial scheduling order which required leave of court to amend and (2) the counterclaim should be dismissed pursuant to Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976) because duplicative judgments will result if Natomas is allowed to proceed with its counterclaim. In his motion to specially strike, Deane moves to dismiss Natomas' counterclaim pursuant to California's anti-SLAPP (Strategic Litigation Against Public Participation) statute, arguing plaintiff's counterclaim improperly seeks to chill his petition rights protected by the First Amendment. See Cal Civ. Code

---

[2] Said motions were subsequently continued for hearing due to the disqualification of Natomas' counsel and a stay of the case pending Natomas obtaining new counsel.

§ 425.16.

## I.   Violation of Pre-trial Scheduling Order

Deane argues Natomas' counterclaim is an amendment of plaintiffs' complaint and, therefore, violates the court's pre-trial scheduling order limiting amendments. (Status (Pre-Trial Scheduling) Order, filed February 6, 2009 [Docket # 51].) ("No further joinder of parties or amendments to pleadings is permitted without leave of court, good cause having been shown.") Natomas argues, to the contrary, that its counterclaim raises *mandatory* counterclaims in response to Deane's counterclaim against it. Natomas is correct, as both Deane's and Natomas' counterclaims arise out of Natomas' Operating Agreement.

Federal Rule of Civil Procedure 13 provides that a counterclaim is mandatory when it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and does not require the court to join a party over which the court cannot obtain jurisdiction. Fed. R. Civ. P. 13. A plaintiff's counterclaim can be treated as merely an amendment to the plaintiff's complaint. Electroglas, Inc. v. Dynatex Corp., 473 F. Supp. 1167, 1171 (N.D. Cal. 1979). However, where a plaintiff's claims are *mandatory* counterclaims to claims asserted in the defendant's counterclaim, the weight of authority allows a plaintiff to file a "counterclaim in reply," as Natomas did here. Id. (citing 5 Wright & Miller, Federal Practice & Procedure, § 1188); Southeastern Industrial Tire Co. v. Duraprene Corp., 70 F.R.D. 585 (E.D. Pa. 1976).

Both parties, while arguing for disparate outcomes, cite Electroglas in their briefs as persuasive authority. The factual

1  underpinnings of Electroglas are very similar to this case.
2  Electroglas, 473 F. Supp. at 1169. Like here, Electroglas
3  involved a dispute among business partners. Id. The plaintiff
4  and the defendant had entered into two simultaneous contractual
5  agreements whereby the plaintiff would obtain exclusive
6  distribution rights as well as purchase a prototype saw from the
7  defendant. Id. Eventually, the defendant reneged on the
8  distribution agreement and the plaintiff filed suit alleging
9  violations of the Sherman and Clayton Acts. Id. The defendant
10 filed a counterclaim based on the contracts between the two
11 parties, to which the plaintiffs responded with a counterclaim in
12 reply also based on the contracts between the parties. Id. The
13 Electroglas court concluded that the plaintiffs' counterclaim in
14 reply would be permitted to stand as pled since it raised
15 *mandatory* counterclaims to the defendant's counterclaim, and the
16 claims were separate and distinct from the plaintiffs' underlying
17 claims in their complaint. Id. at 1171; see Fed. R. Civ. P.
18 13(a).

   The instant action, like Electroglas, involves a dispute
20 amongst business partners. Like Electroglas, plaintiffs' initial
21 complaint contained no claims based on contract, but rather
22 claims for RICO violations, RICO conspiracy, fraud, breach of
23 fiduciary duty, legal and accounting malpractice, and conversion.
24 (Pl.s' SAC ¶¶ 192-251.) Indeed, this court previously held that
25 Natomas' claims in the state court proceeding were different from
26 its claims in the first amended complaint as the state court
27 claims arose out of Natomas' Operating Agreement and the federal
28 claims arose out of Deane's alleged fraudulent conduct. (Mem. &

6

Order re: MTD Pl.'s FAC [Docket No. 123] at 19:18-20:8 ("[T]he issues being litigated in each of the respective proceedings are substantially different.").) Deane's counterclaim was the first pleading in this court to raise issues based on Natomas' Operating Agreement. While Natomas was free to bring claims arising out of its Operating Agreement in its original complaint, and perhaps should have, it is clear that such claims only became mandatory once Deane filed his counterclaim. Therefore, because Natomas' counterclaim in reply was a mandatory counterclaim under Rule 13, the court concludes that it is appropriate to treat Natomas' counterclaim as a counterclaim in reply rather than an amendment to the complaint. As such, Natomas has not violated this court's pre-trial scheduling order, and Deane's motion to dismiss Natomas' counterclaim on this ground is DENIED.

**II. Colorado River**

Deane also argues that Natomas' counterclaim should be dismissed under the Colorado River doctrine as duplicative judgments will result if Natomas is allowed to proceed with this counterclaim. Deane has previously argued that the court should abstain from hearing this entire action under the Colorado River abstention doctrine, which allows federal courts to either dismiss or stay actions under certain circumstances when parallel litigation is occurring in state court. This court rejected Deane's argument, finding that the state and federal proceedings were not parallel. (Mem. & Order re: MTD Pls.' FAC at 19:11-13.) While the court acknowledges that Natomas' counterclaim in reply parallels claims it pursued in state court, the court cannot find any basis for a dismissal or stay under Colorado River because

7

the state court proceedings have been stayed pending the outcome of this action.

The abstention doctrine formulated in <u>Colorado River</u> provides that in the presence of a concurrent state court proceeding, a federal court can abstain from hearing an action based on "considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." <u>Id.</u> at 817. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." <u>Id.</u> at 813. Therefore, the application of the <u>Colorado River</u> doctrine can be justified "only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." <u>Id.</u> at 813 (internal quotations omitted).

Application of what has become known as the <u>Colorado River</u> doctrine requires a court first to address the threshold question of whether there are parallel state and federal proceedings involving the same matter. <u>Moses H. Cone Memorial Hospital v. Mercury Construction Corp.</u>, 460 U.S. 1, 13-15 (1983). If the threshold question of similarity is answered in the affirmative, the court must then determine whether the sort of "exceptional circumstances" warranting a stay or dismissal are appropriate by weighing several factors. <u>See</u> <u>Colorado River</u>, 424 U.S. at 818; <u>Moses H.</u>, 460 U.S. at 23, 26; <u>Fireman's Fund Ins. Co. v. Quackenbush</u>, 87 F.3d 290, 297 (9th Cir. 1996). The factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." <u>Moses H.</u>, 460 U.S. at 21.

Here, the concurrent state proceedings, involving some of the same causes of action, has been stayed by the state court pending the outcome of this federal action. (Pls.' RJN in Opp. to Deane's MTD SAC, Ex. C.) The state court, applying California's version of the Colorado River doctrine, determined that "the interests of comity between the courts require that the federal action be pursued to its conclusion, rather than concurrent litigation in two courts and the possibility of conflicting rulings in the courts." Id.; see Caiafa Prof. Law Corp. v. State Farm Fire & Cas. Co., 25 Cal. App. 4th 800, 804 (1993). Deane argues that a refusal to dismiss the federal action will result in piecemeal litigation where this court and the state court could reach different conclusions regarding the same set of facts, leading to conflicting judgments. If the state court proceedings were still moving towards judgment, this argument could tip the balance towards dismissal of the federal claim--but that is not the case. As the state court proceedings are stayed pending the outcome of this case, there is no risk of conflicting judgments.

Other factors, likewise, do not counsel in favor of dismissal. Neither court has assumed jurisdiction over any property or res. As the parties to the counterclaims will still be before this court regardless of the outcome of this motion, the federal forum is no more inconvenient than the state forum. While it is true that it was the state court that originally obtained jurisdiction over these claims, that has little meaning when the state court has now stayed the case pending this federal action.

9

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." <u>Colorado River</u>, 424 U.S. at 813. This case does not present such exceptional circumstances warranting abstention, and, therefore, Deane's motion to dismiss Natomas' counterclaim based on the <u>Colorado River</u> doctrine is DENIED.

### III. <u>Anti-SLAPP</u>

Lastly, Deane filed a special motion to strike Natomas' counterclaim under California's anti-SLAPP statute, California Civil Code § 425.16. Deane argues that the gravamen of Natomas' claims is Deane's exercise of his First Amendment right to petition. Natomas contends that the bases for its claims are not Deane's constitutionally protected activities, or, in the alternative, that Natomas has established a probability of prevailing on its claims, and thus, its counterclaim does not violate the prescriptions of Section 425.16.

A "SLAPP" is "a meritless suit filed primarily to chill [a] defendant's exercise of First Amendment rights." <u>Wilcox v. Superior Court</u>, 27 Cal. App. 4th 809, 815, fn. 2 (1994); <u>Briggs v. Eden Council for Hope & Opportunity</u>, 19 Cal. 4th 1106, 1126 (1999); <u>Robertson v. Rodriguez</u>, 36 Cal. App. 4th 347, 354-355 (1995). Section 425.16 expressly provides that

> [a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Code § 425.16(b)(1). California's anti-SLAPP law is applicable in federal court and a party may bring an anti-SLAPP motion in federal court separate from any other motion to

10

dismiss. See Thomas v. Fry's Electronics, Inc., 400 F.3d 1206, 1206-07 (9th Cir. 2005); U.S. ex. rel. Newsham v. Lockheed Missles & Space, Co.,190 F.3d 963, 970-72 (9th Cir. 1999).

In evaluating a motion under the statute the court engages in a two-step process. First, the court must determine whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. Equilon Enterprises v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002) The defendant's burden is to demonstrate that the acts of which the plaintiff complains were taken in furtherance of the defendant's right of petition or free speech under the United States or California Constitution in connection with a public issue, as defined in Section 425.16(e). Id. If the court finds such a showing has been made, it then proceeds to the second step, determining whether the plaintiff has demonstrated a probability of prevailing on the claim. Id.; see also Navellier v. Sletten, 29 Cal. 4th 82, 88 (2002). "Only a cause of action that satisfies both prongs of the anti--SLAPP statute-i.e., that arises from protected speech or petitioning and lacks even minimal merit--is a SLAPP, subject to being stricken under the statute." Navellier, 29 Cal. 4th at 89.

Courts applying the anti-SLAPP statute have recognized the "arising from" requirement "is not always easily met." Equilon Enterprises, 29 Cal.4th at 66. The requirement can be satisfied only by showing that the defendant's conduct falls within one of the four statutory categories described in Section 425.16(e). Id. This provision defines "act in furtherance of a person's right of petition or free speech under the United States or

11

California Constitution in connection with a public issue" to include:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Code § 425.16(e). The California Supreme Court has "cautioned that the 'anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability--and whether that activity constitutes protected speech or petitioning.'" Martinez v. Metabolife Intern., Inc., 113 Cal. App. 4th 181, 187 (2003) (quoting Navellier, 29 Cal. 4th at 92). "[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies," and "when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." Martinez, 113 Cal. App. 4th at 188; Wang v. Wal-Mart Real Estate Business Trust, 153 Cal. App. 4th 790, 802 (2007) (applicability of anti-SLAPP statute determined by "principal thrust or predominant nature of the complaint").

After close review of Natomas' counterclaim, the court concludes that the gravamen of Natomas' claims are not any

12

1  constitutionally protected petitioning activities of Deane's, but
2  rather Deane's alleged, nonprotected conduct which violated his
3  duties under Natomas' Operating Agreement.  Natomas alleges that
4  after Solorio informed Deane of his belief that Sinadinos, as
5  well as other defendants, were involved in fraudulent conduct
6  towards Natomas, "Deane soon began activities apparently designed
7  to undermine the investigation by Mr. Solorio of wrongdoing by
8  Mr. Sinadinos and others."  (CC ¶ 12.)  It is these activities,
9  which Natomas alleges are in violation of Natomas' Operating
10 Agreement, that form the gravamen of Natomas' counterclaim.

       More specifically, as alleged in Natomas' counterclaim,
Deane, *inter alia*: (1) met with Sinadinos and Foondos to discuss
their opposition to Solorio inspecting Village and Vintage's
books; (2) actively interfered and obstructed the efforts of
Solorio to protect the interests of Natomas; (3) assisted in the
wrongful and fraudulent conduct of Sinadinos; (4) acted as the
authorized representative of Natomas towards potential investors,
contrary to Natomas' Operating Agreement; and (5) expressly
conspired to facilitate wrongdoing by Sinadinos and obstruct
Natomas' prosecution of claims against Sinadinos, contrary to
provisions in Natomas' Operating Agreement giving the power to
initiate such actions to Solorio as Natomas' manager.  None of
these allegations involve any petitioning activity of Deane which
is protected by California Civil Code § 425.16(e).  See, e.g.,
Briggs v. Eden Council for Hope & Opportunity, 19 Cal. 4th 1106
(1999) (upholding the dismissal of an action pursuant to §
425.16(e) where the acts and statements underlying the complaint
were done during the course of administrative hearings and

13

litigation).

The only petitioning activity by Deane which is alluded to in Natomas' counterclaim is in paragraph 18 which alleges that Deane has obstructed Natomas by pursuing the state court action to appoint a receiver over Natomas. (CC ¶ 18.)  While this is certainly petitioning activity protected by California's anti-SLAPP law, it hardly forms the gravamen of Natomas' counterclaim. See Martinez, 113 Cal. App. 4th at 188 ("[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies").  Instead, here, the counterclaim is premised on Deane's actions, not related to the filing of any lawsuit, but that were in contradiction to Deane's responsibilities under Natomas' Operating Agreement, such as acting on behalf of Natomas and working with Sinadinos to defraud Natomas.

Accordingly, Deane's motion to specially strike Natomas' counterclaim is DENIED.

**IV.  More Definite Statement**

Finally, Deane argues that he is entitled to a more definite statement of plaintiff's claims.  A motion for a more definite statement should not be granted unless a pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e).  This liberal standard is consistent with Rule 8(a)(2), which only requires pleadings that contain a "short and plain statement of the claim."  The Federal Rules of Civil Procedure anticipate that the parties will familiarize themselves with the claims and ultimate facts through the discovery process.  See Famolare, Inc. v.

14

Edison Brothers Stores, Inc., 525 F. Supp. 940, 949 (E.D. Cal. 1981). Indeed, "where the information sought by the moving party is available and/or properly sought through discovery, the motion should be denied." Id. As Deane has shown through his motion to specially strike, delineating in detail the allegations against him, he is clearly on notice as to the issues and claims presented in Natomas' counterclaim. As such, Deane's motion for a more definite statement is DENIED.[3]

## CONCLUSION

The court concludes that Natomas' counterclaim is properly pleaded as a counterclaim and, therefore, does not violate the court's pre-trial scheduling order. Because the state court proceeding has been stayed pending the outcome of this action, the court finds that dismissal pursuant to Colorado River is not warranted. As such, defendant's motion to dismiss Natomas' counterclaim is DENIED. Likewise, the court concludes that the gravamen of Natomas' counterclaim is not based on constitutionally protected petitioning activities, and, therefore, Deane's motion to specially strike Natomas' counterclaim under California's anti-SLAPP statute is DENIED. Finally, the court finds that Deane has adequate notice of the claims against him and, thus, Deane's motion for a more definite

///
///

---

[3] Because the court concludes that Deane has failed to meet his burden of making a threshold showing that the challenged cause of action is one arising from protected activity, the court does not reach the second part of the anti-SLAPP test--whether Natomas has demonstrated a probability of prevailing on the merits of its claims.

1  statement is DENIED.
2          IT IS SO ORDERED.
3  DATED: April 19, 2010

                                    _____
                                    FRANK C. DAMRELL, JR.
                                    UNITED STATES DISTRICT JUDGE

16