UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NATOMAS GARDENS INVESTMENT
GROUP LLC, a California
limited liability company,
ORCHARD PARK DEVELOPMENT
LLC, a California limited
liability company,

        Plaintiffs,

    v.

JOHN G. SINADINOS, et al.,

        Defendants.
_____/

NO. CIV. S-08-2308 LKK/EFB

O R D E R

Defendant Deane moves to compel a "voluntary" dismissal of this lawsuit pursuant to Fed. R. Civ. P. 41(a)(2), or in the alternative, for an order requiring Natomas's counsel to dismiss the action, and/or disqualifying Natomas's counsel. For the reasons set forth below, the motions are DENIED.

////
////
////

1

# BACKGROUND[1]

At the time this lawsuit was filed, Larry Deane and Eric Solorio were the controlling members of Natomas Gardens Investment Group, LLC ("Natomas"), a California Limited Liability Company formed to develop real estate.[2] Dkt. No. 247 at 2-3 (Order April 22, 2010) (Damrell, J.). Eric Solorio was Natomas's "Manager" pursuant to the company's Operating Agreement.[3] Dkt. No. 246 at 2 (Order April 19, 2010) (Damrell, J.)

Solorio and Deane had a falling-out. On September 29, 2008, Natomas – managed by Solorio – filed this federal civil RICO lawsuit against Deane and others. Dkt. No. 1. On October 30, 2008, Deane filed a lawsuit in California Superior Court seeking

---

[1] The court takes judicial notice of the following judicially filed documents, attached to Deane's September 10, 2010 Request for Judicial Notice (Dkt. No. 271): (i) First Amended Complaint, Deane's October 30, 2008 First Amended Complaint in Sacramento Superior Court, seeking dissolution of Natomas, and the December 27, 2003 Natomas Operating Agreement (attached to the Complaint as Exhibit 1); (ii) the Superior Court's December 19, 2008 Minute Order granting Deane's request for the appointment of a Receiver; (iii) the March 12, 2009 Superior Court Order granting Deane's request for the appointment of a Receiver; and (iv) Solorio's June 23, 2010 Chapter 7 Bankruptcy Petition. The court also takes judicial notice of the following public documents, attached to the December 21, 2010 Solorio Declaration (Dkt. No. 309): (i) the November 24, 2010 "Discharge of Debtor" for Solorio (Bankr. E.D. Cal.); and (ii) the August 18, 2003 Natomas Articles of Organization, filed with the California Secretary of State. See Fed. R. Evid. 201 and 201; U.S. v. Camp, 723 F.2d 741, 744 (9th Cir. 1984) (taking judicial notice of a public record, "verifiable with certainty").

[2] A California Limited Liability Company ("LLC") has "members" rather than shareholders or partners. See Cal. Corp. Code § 17001.

[3] The Operating Agreement prescribes how the LLC conducts its business  See Cal. Corp. Code § 17001(ab).

the dissolution of Natomas pursuant to Cal. Corp. Code 17351(a)2) and (4).  Dkt. No. 271 Exh. B.  On June 23, 2010, Solorio filed for personal bankruptcy.  Dkt. No. 271 Exh. E.

The sole basis for Deane's Rule 41(a)(2) motion is his claim that he is now the Manager of Natomas, and therefore possessed of the authority to dismiss this case voluntarily.  The sole basis for this claim of authority is that the Operating Agreement divested Solorio of his management position when Solorio filed for bankruptcy, and simultaneously installed Deane as the Manager.  In turn, the sole basis for Solorio's opposition is his own interpretation of the Operating Agreement.

The court therefore turns its attention to the Operating Agreement itself.[4]

### Standard for Interpreting the Operating Agreement

The Operating Agreement is a contract governed by California law.  See Dkt. No. 271 Exh. B(1) at ¶ 11.4.  The court is therefore guided by California law governing the interpretation of contracts. "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636.  "The language of a contract is to govern its

---

[4] Neither party argues that any extrinsic evidence is needed to interpret the Operating Agreement properly. See Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co., 69 Cal.2d 33, 38 (1968) (addressing contract interpretation when extrinsic evidence is offered to explain the meaning of contract terms); Trident Center v. Connecticut General Life Ins. Co., 847 F.2d 564, 569 (9th Cir. 1988) (same).

3

interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641. In general, the court "must view the language in light of the instrument as a whole and not use a 'disjointed, single-paragraph, strict construction approach,'" and it should avoid an interpretation "which renders part of the instrument to be surplusage." Ticor Title Ins. Co. v. Rancho Santa Fe Assn., 177 Cal. App.3d 726, 730 (4th Dist. 1986) (citations omitted).

**THE OPERATING AGREEMENT**

**A.  Article 5 - Management**

The Operating Agreement expressly, and by name, makes "Eric K. Solorio" the "Manager" of Natomas, and vests complete and exclusive management authority in him.[5] Article 5 of the Agreement provides:

(i) "The Company shall be managed by a Manager who need not be a Member;"

(ii) "The initial Company Manager shall be Eric K. Solorio. ...;" and

(iii) "... the Manager shall have full, exclusive, and complete discretion, power, and authority, to the exclusion of

---

[5] The Operating Agreement even defines the term "manager" to mean "Eric K. Solorio or any other Person or Persons who may succeed him as Manager, as provided in this Agreement." Dkt. No. 271 at 15 (Operating Agreement).

4

the Members ... to manage, control, administer, and operate the day-to-day business and affairs of the Company ...."
Id. at ¶¶ 5.1, 5.1.1 & 5.1.2.[6]

Deane argues that Solorio has been automatically removed as Manager pursuant to the Operating Agreement, but he fails to identify any language in Article 5 of the Operating Agreement to explain how this removal supposedly occurred.[7]  In fact, Article 5 specifically provides for the end of the Manger's term:

> If Solorio resigns, dies, is physically or mentally incapacitated ... or otherwise unwilling to serve as Manager, Deane shall automatically become [Manager] without the need for the approval of the Members.

Id. at ¶ 5.1.1.  Deane argues that Solorio was automatically removed from his position because he filed for bankruptcy, but bankruptcy is not one of the events that triggers the removal of the Manager pursuant to ¶ 5.1.1.

**B.   Article 6 - Involuntary Withdrawal**

Deane instead turns to Article 6 of the Operating Agreement, which addresses "Transfer of Interests and Withdrawals of Members." Article 6, however, contains no reference to the Manager at all, much less to removal of the Manager.  What Article 6 does contain,

---

[6] Nothing in the Agreement vests any management authority to anyone other than Solorio.  Article 5 does, however, require Solorio to obtain Deane's consent for specified actions.

[7] The omission is glaring, since Article 5 contains the **only** provision in the Agreement that addresses the removal of the Manager, ¶ 5.1.1.  Deane does refer to ¶ 5.1.1, but only to claim that he would become the Manager if Solorio were no longer serving.

5

is a description of the consequences for members who "involuntarily withdraw" from Natomas:

> After an Involuntary Withdrawal, the withdrawn Member or the successor in interest to such Member shall thereafter be treated as merely holding the Economic Interest of such Member, <u>without the right to Vote or participate in the management of the Company.</u>

Dkt. No. 271 at 32 ¶ 6.2.3 (underlining in the original submitted for judicial notice).

Deane asserts that Solorio's bankruptcy caused him to "involuntarily withdraw" from Natomas.[8] Since Solorio is no longer a member, Deane argues, Solorio cannot "participate in the management of the Company,"[9] and therefore he is no longer the Manager. This argument – that "Manager" status is contingent upon

---

[8] Pursuant to the Operating Agreement, a member "involuntarily withdraws" if "the Member is bankrupt." Dkt. No. 271 Exh. B(1) ¶ 6.2.2(b). Solorio and Deane argue over whether it is the filing of the bankruptcy petition or the issuance of an "order of relief" by the bankruptcy court that triggers the "involuntary withdrawal." See Cal. Corp. Code § 17001(c) (a "bankrupt" is a person who is subject to an order of relief under the federal bankruptcy code). It makes no difference for purposes of these motions, because (i) Solorio has now received his order of relief (Dkt. No. 309 Exh. A); and (ii) neither event divests Solorio of his position as Manager.

[9] The court notes that the same Operating Agreement provides for the automatic, involuntary withdrawal of any member who "files an action seeking a decree of judicial dissolution pursuant to Section 17351" of the California Limited Liability Company Act, Cal. Corp. Code §§ 17000, *et seq.* Deane admits that he filed such an action, but argues that the provision which divests him of his membership interest – unlike the provision which divests Solorio of his membership interest – is "unconscionable." It is not necessary to decide the issue in this motion.

6

membership in Natomas – is facially invalid, since the Operating Agreement expressly states: "The Company shall be managed by a Manager *who need not be a Member*." Dkt. No. 271 at 25 ¶ 5.14 (emphasis added).

Nor does Solorio's position as Manager derive from his membership in Natomas. Solorio's position as Manager, as discussed above, derives directly – and solely – from his appointment as Manager in the Operating Agreement itself. Dkt. No. 271 Exh. B(1) at 25 ¶ 5.1.1 (appointing Solorio as manager). To the contrary, <u>no</u> management authority or "participation" derives from membership in Natomas – not for Solorio, not for Deane, and not for any member of Natomas – notwithstanding the Agreement's rote recitation of the statutory term "participation in management."

The governing statute provides that a limited liability company shall be managed by its members <u>unless</u> its articles of incorporation vest management of the company "in a manager or managers," as is the case here. Natomas's Articles of Organization state that it will be managed by "one manager." Dkt. No. 309 Exh. B. Finally, Natomas's Operating Agreement specifies that the "one manager" of Natomas is Solorio. Not only does nothing grant any management rights to the members, the Operating Agreement quite forcefully makes clear that they have none. As described above, the Operating Agreement vests <u>all</u> management authority in Solorio "to the exclusion of the members."

Deane's argument confuses the term "participation in management" with the term "Manager." But reading the Operating

1  Agreement as a whole, as required by the canons of contract
2  interpretation, it is clear that the two terms are completely
3  separate: the management authority of the Manager comes from the
4  Operating Agreement, Article 5; whereas the members' illusory right
5  to management "participation" comes from their status as members.
6  When Solorio supposedly withdrew from Natomas as a member, what he
7  lost was the non-existent "right" to participate in management that
8  derived from his membership – in other words, nothing.

## C. Article 7 - Dissolution

However, a provision in Article 7 of the Operating Agreement does explicitly address the possibility of Solorio's bankruptcy filing:

> The death, incapacity, bankruptcy or dissolution of any Member shall not result in the dissolution of the Company. The successor in interest to any such Member, *other than a successor to Deane and/or Solorio*, shall automatically be deemed the holder of an Economic Interest in the Company <u>but shall have no right to Vote or participate in the management of the Company.</u>"

Dkt. No. 271 at 33 ¶ 7.1.4 (italics added; underlining in the original).

This provision ensures that the "successor in interest" to a bankrupt member will have no ability to participate in the management of the company. But it explicitly excludes Solorio (and Deane) from its terms. It appears to be the only clause in the Agreement that contemplates the possible bankruptcy of Solorio by

8

name. Far from divesting Solorio of his management authority in the event of his bankruptcy, it apparently permits his "successor in interest" to vote,[10] and to exercise whatever management authority derives from his membership interest.[11] In other words, this provision prevents all members other than Solorio (and Deane) from voting and exercising any management authority after a bankruptcy.

## CONCLUSION

Deane's Rule 41(a)(2) dismissal motion, as well as his alternate motions for an order requiring Natomas's counsel to dismiss this action or to disqualify Natomas's counsel, are principally based on the premise that Deane has taken Solorio's place as the Manager of Natomas and therefore is in control of the plaintiff (Natomas) in this lawsuit. Because the documents before the court establish that Solorio – not Deane – is the Manager, the motions are DENIED.[12]

---

[10] Deane complains that it would "defy common sense and violate basic contract interpretation" to allow Solorio, or the bankruptcy trustee, a complete stranger to Natomas, to continue as Manager after his bankruptcy. Dkt. No. 288 at 9 of 13. To the contrary, the only provision of the Agreement to address the issue makes it quite clear that Solorio's successor in interest retains Solorio's right to vote. It does not indicate here, or in Article 5, that Solorio's position of Manager would cease upon bankruptcy.

[11] As noted above, however, no management authority actually derives from membership in Natomas.

[12] Separately, Deane engages in a bit of "heads I win, tails you lose" argument. He argues that if Solorio is paying Natomas's counsel out of his own pocket, as ordered by the Superior Court, then Natomas's counsel thereby suffers from an irreconcilable conflict. But Deane simultaneously argues that if Solorio is not paying Natomas's counsel out of his own pocket, then Solorio is in

1  IT IS SO ORDERED.

2  DATED: September 16, 2011.

3

4

5  _____
  LAWRENCE K. KARLTON
6  SENIOR JUDGE
  UNITED STATES DISTRICT COURT

---

violation of the Superior Court's order, and Natomas's counsel is being paid out of forbidden funds.  This court decides only actual cases and controversies, not theoretical questions predicated upon hypothetical fact patterns.  Deane's motion to disqualify, to the degree it is predicated upon his proffered hypotheticals, is disregarded.  Deane also asks the court to disqualify Natomas's counsel based upon his new Reply Brief arguments that he does not approve of how Natomas's counsel has litigated this motion and counsel's conduct of settlement and release negotiations.  See Dkt. 288 (Deane's Reply to Natomas's Opposition to Dismissal Motion).  Deane's motion to disqualify, to the degree it is predicated upon these arguments, is denied.